CULLACOTT ET AL. V. CASH GOLD AND SILVER MINING COMPANY.

1. In proving the identity of a patented mining claim the rule is that monuments will control courses and distances; it is not necessary that the former be unquestionable in order to control the latter.
2. Courses and distances, under the authorities, are assigned the lowest place in the scale of evidence, as being the least reliable.
3. It is not so much the character of the monuments, as satisfactory proof of their location, that is to fix the *locus in quo.*
4. It is only after the entire description in a patent has been considered, and found so inaccurate as to render the indentity of the grant wholly uncertain, that the grant is to be held void.

*Appeal from District Court of Boulder County.*

THE facts are stated in the opinion.

Mr. G. B. REED and Mr. J. H. DENISON, for appellants:

Mr. L. C. ROCKWELL, for appellee.

BECK, C. J.    The facts of this case are novel. Prior to the acquisition of the government title it is not an unusual circumstance for a mining claim to be entered upon and appropriated by strangers to the location.

A failure on the part of the original locators to comply with any of the specific requirements of the law relating to the location of mining claims, or failure to perform annual labor within the time and of the value required, after location, is often made the pretext for jumping or relocating claims. But after the miner has complied with all requirements of state and federal statutes, has bought

and paid for his claim, and received the patent investing him with title thereto in fee-simple, it has been supposed that the jumping period has expired, and that the miner was secure in the possession of his surface ground and improvements, at least. It would seem that even this rule has its exceptions, the case before us furnishing an example. The Cash mine at Gold Hill, Boulder county, was located by Robinson, Holk and Sanford, in November, 1872, and was surveyed for patent early in the spring of 1873. Payment was made to the government, and a duplicate receiver's receipt issued to the locators, bearing date May 15, 1873. Considerable work appears to have been done upon the property, for in addition to the discovery shaft, covered by a shaft house, five or six other openings or workings upon the vein were made. The vein is a strong one, and crops out on the surface from five hundred to one thousand feet.

A government patent was issued to the locators, February 4, 1875, for fifteen hundred feet in length by fifty feet in width, upon the Cash lode, being mineral entry No. 343, and lot No. 62, in Gold Hill mining district. The field-notes and plat of the official survey were incorporated as part of the description. The property became, and still remains, one of the best known mining properties in the vicinity of Gold Hill. Not only was its name familiar, but the lode itself was prominent, cropping out, as stated, upon the surface, and the workings thereon being distributed along the course of the vein. Its monuments, also, were known, used and referred to in the location of mining claims in the neighborhood.

The government title thus acquired was transferred to the Cash Gold and Silver Mining Company, the appellee herein, in June, 1875, and remained unquestioned until the autumn of 1880, when the appellants took possession of the lode, surface grounds and workings, and located what they named the Queen of May lode, with the dimensions of one thousand five hundred feet by one hun-

dred and fifty feet, the Cash lode and its improvements forming the interior of the parallelogram.

The only perceivable excuse for this appropriation of the property of the appellee is a misdescription of the patented premises as to courses and distances, the principal error being in the course and distance of corner No. 1, from the quarter section corner on the east boundary of section 12, township 1 north, range 72 west, of the sixth principal meridian.   The bearing of the quarter section corner from corner No. 1, as stated in the patent, is N. 83° 39' E., and the distance one thousand four hundred and three feet; whereas recent surveys make the correct bearing, N. 75° 58' 37" E., and the actual distance one thousand three hundred and sixty-five feet two inches.

The surveyor who made the official survey for patent had died before the date of the trial below, and no witness was able to say whether the line described as tying corner No. 1 to the quarter section corner had been actually run and measured, or estimated only.   It is probable, however, that it was merely estimated, since the testimony shows that it would be difficult to measure it on a true course on account of the rough and broken condition of the ground.

The appellants, relying upon this error to justify their appropriation of the patented premises, gravely contended that the ground called for in the patent lay wholly outside the Queen of May location.   In support of this theory, they caused a survey to be made of a certain parcel or plot of ground, having the same dimensions described in the patent, the lines being run from the initial point indicated in the patent as corner No. 1, computing the locality of such point from the quarter section corner, by course and distance.   The tract thus laid off was duly platted and labeled "Cash Lode," although it was, in fact, two hundred feet distant from the boundaries of the patented premises at the nearest point.   This plat

and survey, together with a plat and survey of the so-called Queen of May lode, were exhibited to show that no conflict existed between the two locations.

But this farce was duly exposed on the cross-examination of the appellants' surveyor, who was forced to admit that, in establishing the exterior lines of the Queen of May location, he had included within its boundaries the discovery shaft, shaft house and surface improvements of the Cash lode.

Other discrepancies in the patent, as tested by recent surveys, were in the length and width of its surface ground, and in the bearings of its side lines. Instead of being one thousand five hundred feet in length, by fifty feet in width, it was found to measure only one thousand three hundred and seventy-eight feet in length, by forty-six feet six inches in width, and a variance of one degree forty-nine minutes was discovered in the bearing of its side lines. The shortage in measurements was explained by the facts that the surface is hilly and uneven, and that the measurements in the original survey were along the slopes or surface, where, as the recent measurements were horizontal, lines laid off by the former method would necessarily fall short when tested by the latter method.

But the identity of the patented premises does not depend upon courses and distances alone. There were other calls in the patent. It calls for a "*granite rock in mound of stones*" at each of the four corners of the surface ground; the plat, incorporated as a part of the description, shows the location of the discovery shaft; and another fact of importance is, that the name of the lode or mine is given.

Several errors are assigned to the rulings of the court upon the trial, and to the instructions given and refused, but the controlling question in the case is, were the premises in controversy properly and sufficiently identified as the premises described in the patent?

Counsel for appellants contend that monuments, to control courses and distances in the description of real estate, must be *unquestionable;* otherwise courses and distances must prevail.

They further contend that a rock in a mound of stones, in a country abounding in rocks and stones, is not an unquestionable monument.

The rule of law is, that monuments will control courses and distances, and while judges, in commenting upon the facts of particular cases, speak of the monuments as being unquestionable, the rule is not so qualified. The material substance out of which monuments shall be made is not specified in the law. Their existence and location may become questions of fact, to be determined, like other questions of fact, according to the rules of evidence. All the authorities on the subject assign to courses and distances the lowest place in the scale of evidence, as being the least reliable. Mr. Washburn says this kind of evidence is regarded with great confidence in some cases where the lines are short. He adds, however, "but, ordinarily, surveys are so loosely made, instruments so liable to be out of order, and admeasurements, especially in rough or uneven land or forest, so liable to be inaccurate, that the courses and distances given in a deed are regarded as more or less uncertain, and always give place, in questions of doubt or discrepancy, to known monuments and boundaries, that are referred to in the deed as indicating and identifying the land." 3 Wash. Real Prop. (4th ed.) 403.

That it is not so much the character of the monuments, as satisfactory proof of their location, that is to fix the *locus in quo,* is shown by the adjudged cases.

In *Lodge v. Barnett,* 46 Pa. St. 484, it is said: "The courses and distances in a deed always give way to the boundaries found upon the ground, or supplied by the proof of their former existence, when the marks of monuments are gone. So the return of a survey, even

though official, must give way to the location on the ground, while the patent, the final grant of the state, may be corrected by the return of survey, and if it also differs, both may be rectified by the work on the ground."

In *Opdyke v. Stephens*, 4 Dutcher, 89, the court says: "But the rule is well settled that boundaries may be proved by every kind of evidence that is admissible to establish any other fact." *Smith v. Prewitt*, 2 A. K. Marsh. *158, is cited in support of this proposition.

In Tyler's Law of Boundaries, etc., p. 285, it is said: "Where monuments, for example, stakes, stones, or a tree, are referred to in a deed, parol proof is always admissible to show their location."

Tested by these rules and principles, we think the original boundaries of the Cash lode were established by competent testimony on the trial, and that the jury was fully warranted in finding that the appellants had unlawfully entered upon and taken possession of said lode. Three out of the four monuments called for were identified by witnesses who had known its boundaries for from five to eight years, one of them being a deputy United States mineral surveyor, who had been accustomed, for several years, to survey mining claims in the neighborhood, and who stated that he had tied surveys of other properties to its corners, probably one hundred times. There was no question of conflicting lines or surveys here, but simply a question of identifying the patented premises as a whole. The effect of the doctrine contended for by the appellants would be to declare the grant void for uncertainty. But it is only after the entire description in a patent has been considered, and found so inaccurate as to render the identity of the grant wholly uncertain, that the grant is to be held void. *Broadman v. Lessees of Reed*, 6 Pet. 345.

It is plain that no such consequence could result here, for the identity of the property in controversy, as the Cash lode, was known to the witnesses of both sides.

This being the name under which it was granted, and under which it had been for years held, worked, and generally known, the name alone would be a sufficient description to prevent a forfeiture. Sedgwick & Wait on Trial of Title to Land, sec. 461.

We regard the proof of identity as leaving no reasonable ground of doubt that the property recovered is the same property described in the patent.

The irregularities complained of are of minor importance. None of them are deemed of sufficient importance to warrant a reversal.

The judgment will, therefore, be affirmed.

*Affirmed.*