HOFFMAN ET AL., APPELLANTS, *v.* BEECHER, RE-
SPONDENT.

[Submitted June 7, 1892. Decided September 15, 1892.]

MINES AND MINING—*Adverse claim—Jurisdiction.*—In an action brought upon an adverse claim under section 2326 of the United States Revised Statutes, the trial court has no jurisdiction to review the action of the officers of the land department in holding that a plat and adverse claim conformed to their rules.

SAME—*Same—Pleading.*—In an action upon an adverse claim it is not necessary that it be alleged in the complaint that the action was brought in respect to the property mentioned in the adverse claim.

SAME—*Same—Variance between complaint and adverse claim.*—A variance in the description of the premises, as contained in the complaint and adverse claim, which consists in giving the general course of the last line of plaintiff's claim as southwest in the adverse claim, when it should have been southeast as given in the complaint, is harmless, where the place of beginning is designated as the terminus of such last line.

SAME—*Same— Variance.*—Where the lengths of the side and end lines of plaintiff's claim are reduced in the description given in the complaint from that given in the adverse claim the variance is immaterial where it appears that the defendant's claim, which is also described in the complaint, is wholly within the boundaries of plaintiff's claim.

SAME—*Same—Sufficiency.*—The court assuming jurisdiction to inquire whether the adverse claim in the case at bar had been framed in accordance with section 2326 of the United States Revised Statutes, and the regulation of the general land office, requiring that the plats filed in support of an adverse claim must be made from an actual survey by a United States deputy surveyor, *held*, that where application for a patent is made at a time when it is impossible to secure a survey of a claim adverse thereto, on account of great depth of snow, the adverse claimant might show the nature, boundaries, and extent of his adverse claim, as nearly as practicable from information within his reach.

*Appeal from Seventh Judicial District, Yellowstone County.*

Action upon an adverse claim to determine right to possession of mining premises. Nonsuit granted, and judgment entered for defendant by MILBURN, J. Reversed.

*Luce & Luce,* for Appellants.

After the evidence of the plaintiffs had been introduced and their case closed, the court of its own motion found for the defendant for the reasons: *First.* That the court did not have jurisdiction. *Second.* That the plaintiffs had not made out a *prima facie* case, one of the defects being the variance in the description of the property in the adverse claim and the description in the amended complaint. The plaintiffs then asked leave to amend the complaint to conform to the evidence,

which the court refused and rendered judgment for the defendant dismissing the action. The court apparently intended to try the question as to the sufficiency of the adverse claim filed in the land office and not the true question at issue, namely: the right to the possession of the mining property in question. The department of the interior tries the question as to the sufficiency and validity of an adverse claim, and the courts try the question of the right to possession. (U. S. Rev. Stats. §§ 2325, 2326; *Bell* v. *Aiken,* 4 Copp's Land Owner, 66; *Owens* v. *Stevens,* 9 Copp's Land Owner, 190; *Bowdie Tunnel etc. Co.* v. *Bechtol etc. Co.* 1 Copp's Land Owner, 595.) When the court takes jurisdiction all proceedings in the land office must cease (*Anthony's Case,* 9 Copp's Land Owner, 164; *St. Lawrence Min. Co.* v. *Albion Co.* 10 Copp's Land Owner, 51); and that whether adverse claim is in prescribed form or not. (*Brettel* v. *McMaster,* 10 Copp's Land Owner, 306.) Even where the adverse claim was dismissed for irregularity. (*Brettel* v. *McMaster,* 10 Copp's Land Owner, 322. See, also, *Wheeler's Case,* 7 Copp's Land Owner, 130, as to what the department held to be sufficient adverse claim.) The court clearly erred in holding that it had no jurisdiction, as the pleadings showed that the defendant had appeared in the action, and the allegations of the complaint were sufficient. (Mont. Comp. Stats. § 366, p. 266; *Mattingly* v. *Lewisohn,* 8 Mont. 259; U. S. Rev. Stats. §§ 2325, 2326.) And no other court has jurisdiction. (See *Bowdie Tunnel etc. Co.* v. *Bechtol etc. Co., Bell* v. *Aiken, Owens* v. *Stevens,* and *Anthony's Case, supra.*) When the application for patent is made at a time when it is impossible to secure a survey of the adverse claim, the adverse claimant may show the nature, extent, and boundaries otherwise than by a certified plat of survey. (*Philadelphia Min. Co.* v. *Finley,* 10 Copp's Land Owner, 340; *J. S. Wallace,* 8 Copp's Land Owner, 188.) The testimony of the witness who surveyed the Silver Queen and Lake Superior Claims, shows that the Lake Superior includes the whole of the Silver Queen, and that the Lake Superior stakes were found when the survey of the Silver Queen was made. It appears in evidence that the northwest, southeast, and southwest location corners of the Silver Queen are also the location corners of the Lake Superior Lode and

that the northeast corner was not found, but that it was near the northeast corner of the Lake Superior. No evidence could have greater weight to show the conflict, and that the Silver Queen is embraced by the Lake Superior, than that contained in the official survey for patent of the Silver Queen Lode. The lower court found that the proof on behalf of the plaintiffs showed that the land described in the complaint was not the mining ground referred to and described in the adverse claim. A bare comparison of the proofs with the adverse claim will show that the identical mining claims are meant, and that the *data* for the survey of the Lake Superior Lode was the matter that is contained in the adverse claim.

It is true one course is designated as "thence southwest 600 feet to the place of beginning," and while it seems that it might have been more properly southeast, still the other courses are correct, and the declaratory statement refers to the location of the Young America, and the starting point of the bounding courses is described as a "stake standing on the easterly side line of Young America Lode about 500 feet from its northeast corner," etc. It was a call, therefore, to run from one known monument to another, and in such cases the course gives way and the call for fixed monuments is observed. The course called for, therefore, was wholly immaterial, for it was a call for an end line from one established corner to another. (*Ayers* v. *Watson*, 113 U. S. 594, 605; *Preston* v. *Bowmar*, 6 Wheat. 580; *Wagenblast* v. *Washburn*, 12 Cal. 209, 212; *Wendell* v. *Jackson*, 8 Wend. 190; 22 Am. Dec. 635; *Piercy* v. *Crandall*, 34 Cal. 334, 344; *Serrano* v. *Rawson*, 47 Cal. 52; *Duryea* v. *Boucher*, 67 Cal. 141; *Gleeson* v. *Mining Co.* 9 Morr. Min. Rep. 429; *Garner* v. *Glenn*, 8 Mont. 371; *Metcalf* v. *Prescott*, 10 Mont. 283; *Upton* v. *Larkin*, 7 Mont. 449.) How the court below could have had the slightest doubt as to the identity of the land described in the complaint with that described in the adverse claim it is hard to understand; for both in the complaint and in the adverse claim the Silver Queen is described as being wholly within the Lake Superior Claim, and the latter, both in the complaint and in the adverse claim, is described with reference to the Young America and the Homestake Mining Claims, both of which it adjoins.

*Savage & Day,* for Respondent.

The ruling of the court below is based upon two propositions: *First,* that no adverse claim was filed according to the requirements of the Revised Statutes of the United States; and *second,* that the action was not being prosecuted in support of the alleged adverse claim filed. The first proposition brings up for consideration the question as to the right of the court in a case of this character to consider the sufficiency of the alleged adverse claim filed in the land office. The very basis of this action is the filing of an adverse claim in the proper land office within the proper time, complying with the requirements of the statute. When the alleged adverse claim is presented to the land office, the officers simply consider the sufficiency of form and not of substance, and treat the claim presented, for the purposes of the examination, as a pleading on general demurrer. (*Jenny Lind Min. Co.* v. *Eureka Min. Co.* Copp's U. S. Min. Laws and Decisions, 1873–1874, p. 173; Weeks' Mineral Lands, § 144.) Having determined that the adverse claim is sufficient in form, the contest is then referred to the court for determination. The action being brought in support of an adverse claim, it becomes a jurisdictional question with the court whether the requirements of the statute in relation to the filing of such claims have been complied with, and the plaintiffs must allege and prove a full compliance in order to stay the issuance of a patent to the applicant, or to try the right of the applicant to that patent. (*Mattingly* v. *Lewisohn,* 8 Mont. 259; *Marshall Silver Min. Co.* v. *Kirtley,* 12 Colo. 410.) The first requirement of section 2326 of the Revised Statutes of the United States relative to adverse claims, is that the papers filed must show the "nature, boundaries, and extent of the adverse claim." The general land office has promulgated the rule for the government of its officers that the boundaries and extent of the claim can be shown only by a plat made from an actual survey by a United States deputy mineral surveyor, etc. This requirement was not complied with, nor was there any application made to the land office for leave to file other papers than those required. Conceding, however, that the plats and affidavits attached to the alleged adverse claim sufficiently comply with the regulations of the land office

to entitle them to be filed, the defects appearing upon the face of the adverse claim are sufficient to show that the papers filed as the alleged adverse claim do not correctly set forth the "nature, boundaries and extent" of the claim as located, and are inaccurate and unreliable. One of the objects of the requirements that the adverse claim shall show correctly the nature, boundaries and extent of the claim is that the court may determine the claimant's right thereto, and if he is found entitled to it a patent will be issued, describing the claim as it is thus set forth. In construing these various conflicting descriptions to be found in the papers offered in evidence to show the filing of an adverse claim, the location notice as recorded, being the basis of the claimant's right, must govern, and must be given the same effect as any other muniment of title under the registration laws of the State. (*Campbell* v. *Rankin*, 99 U. S. 261.) The land department requires all official surveys of mining claims to be made from the location notice. (Circular, General Land Office, November 20, 1873, Copp's U. S. Min. Laws and Decisions, 1873–1874, p. 319.) The recorded notice is subject to the construction and governed by the rules applicable to any other muniment of title. The most common of these rules is that the monuments, whether natural or artificial, control the courses and distances, when such monuments are to be found on the ground as called for. (*Pollard* v. *Shively*, 5 Colo. 309; *Cullacott* v. *Cash G. & S. Min. Co.* 8 Colo. 179; *Piercy* v. *Crandall*, 34 Cal. 334; *Jackson* v. *Wendell*, 5 Wend. 146.)

BLAKE, C. J.—This action was commenced by adverse claimants to determine the right of possession of a lode mining claim. The amended complaint alleges, among other things, that the plaintiffs, on the sixteenth day of February, 1887, and for a long time prior thereto, were the owners and in the possession of the Lake Superior Lode Mining Claim; that the same was discovered June 23, 1882, by the grantor and predecessor in interest of the plaintiffs; that the statement and notice of the discovery and location thereof were recorded; that the defendant filed in the month of February, 1887, in the United States land office at Bozeman, his application for a patent for the Silver Queen Lode Mining Claim, which was within the boundaries of

the said Lake Superior Lode Mining Claim; and that a notice
of this application was published in a newspaper which had
been designated by the proper officer.

It is further alleged "that, within the statutory period of
the publication of said notice in said newspaper, to wit, on the
sixteenth day of April, 1887, the plaintiffs filed in said land
office, with the register and receiver thereof, their adverse claim
under oath, showing the nature, boundaries, and extent of their
adverse claim; whereupon all proceedings in said land office, to
the extent and as required by law, were stayed on said appli-
cation for patent by said register and receiver."

The answer denies the averments of the complaint concerning
the Lake Superior Lode Mining Claim, and sets forth the title
of the defendant to the Silver Queen Lode Mining Claim. The
following paragraphs relate to the adverse claim: "Denies that
within the statutory period of the publication of the defendant's
said notice of application for a United States patent for said Silver
Queen Quartz Lode Mining Claim, to wit, on the sixteenth
day of April, 1887, or at all, the plaintiffs, or any of them,
filed in said Bozeman land office, with the register and receiver
thereof, or with either of them, their or either of their legal
notice, or their or either of their adverse claim, under oath
showing the nature or boundaries or extent of their or either
of their adverse claim; denies that the plaintiffs ever filed in
said land office any legal notice of their or either of their alleged
adverse claim."

The action was tried by the court without a jury, and after
the plaintiffs "rested their case" the following proceedings
took place: "Thereupon the court found for the defendant as
follows: (1) On the ground that the facts do not sufficiently
appear to the court, either from the pleadings or the evidence,
to give this court jurisdiction of the case. (2) And, if the
court had jurisdiction of the case, the plaintiffs have not made
out a *prima facie* case under the evidence; one of the fatal
defects in the case being the variance in the description of the
property in the adverse claim, and the description in the amended
complaint, this being only one of the reasons upon which the
court bases its ruling.

"Whereupon the defendant's counsel made the following state-

ment: I would like to have the court find as a fact that the amended complaint is not in support of the adverse claim as filed.  By the court: I have said for that and other reasons; I have left room enough.

"Whereupon at that time after the said statement of the court and the finding for the defendant upon said motion for nonsuit as aforesaid, the plaintiffs asked leave of the court to amend the amended complaint so as to make the allegations of the said complaint conform to the description and other matters contained in the adverse claim filed in the land office and introduced in evidence in this case.

"Whereupon the court overruled said motion for the reasons following, to wit: I think, in respect to that, that the court has all along lacked jurisdiction in this case because of the fact, among other reasons, that there is no allegation in the amended complaint that the action was brought in respect to the property mentioned in a certain adverse claim; and, the court not having had jurisdiction in this case, the court could only hold in fact that no case had been commenced at all upon this adverse claim, and the time within which such action could be brought has long since expired.  I will deny the request of plaintiffs. . . . .

"Whereupon the court added to the reason already given for refusing to allow plaintiffs to amend their amended complaint the following: That the court believes there should be an end to litigation, and that this cause, in the opinion of the court, has lasted long enough on such facts as have been presented to the court."

Judgment was entered accordingly, and we have quoted at length all the reasons which are given by the court for this decision upon its own motion.

The statutes of the United States regulating the procedure in these matters are as follows: "Where an adverse claim is filed during the period of publication, it shall be upon oath of the person or persons making the same, and shall show the nature, boundaries, and extent of such adverse claim, and all proceedings, except the publication of notice and making and filing of the affidavit thereof, shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived.  It shall be the duty of the adverse claimant, within thirty days after filing his claim, to commence

proceedings in a court of competent jurisdiction, to determine the question of the right of possession, and prosecute the same with reasonable diligence to final judgment; and a failure so to do shall be a waiver of his adverse claim." (U. S. Rev. Stats. § 2326.)

Did the plaintiffs file an adverse claim in the United States land office in compliance with the law? This is the first question which arises in the investigation of the foregoing rulings of the court. It is shown by the transcript that the plaintiffs filed the following papers with their adverse claim: The affidavits of seven persons; copies of the locations of the Lake Superior Lode Mining Claim, the Young America Lode Mining Claim, and the Homestake Lode Mining Claim; two plats of the Lake Superior Lode Mining. Claim; and an abstract of title to the Lake Superior Lode Mining Claim.

The court below seems to have been of the opinion that the plaintiffs followed the law in this respect, but the respondent asserts in his brief that the boundaries and extent of the adverse claim are not specified. This document states that the plaintiffs were "the lawful owners and entitled to the possession of one thousand one hundred and forty (1,140) feet of the said Silver Queen Lode or Mine, and all the surface ground thereof described in said application for patent, as shown by the diagram of said mining claim posted on said claim, and the copy thereof filed in the said land office with said application for patent." This allegation regarding the boundaries and extent of the adverse claim is supported by the affidavits and plats showing that the Silver Queen Lode Mining Claim is contained within the Lake Superior Lode Mining Claim. The general land office has issued rules for the guidance of the registers and receivers of the land districts. The respondent insists that the plaintiffs did not observe the requirement that the "plat must be made from an actual survey by a United States deputy surveyor, who will officially certify thereon to its correctness; and in addition there must be attached to such plat of survey a certificate or sworn statement by the surveyor as to the approximate value of the labor performed or improvements made upon the claim by the adverse party or his predecessors in interest, and the plat must indicate the position of any shafts, tunnels, or

other improvements, if any such exist, upon the claim of the party opposing the application, and by which party said improvements were made." (Rule No. 86.)

The Supreme Court of Nevada, in *Rose* v. *Richmond Min. Co.* 17 Nev. 55, decided against the position of respondent upon a ground which we are inclined to favor, and says: "The claim of respondent that the protest does not show 'the nature, boundaries, and extent' of the Uncle Sam location and lode is untenable. This objection is one that should, if relied upon, have been made in the land office when the protest was filed. It is questionable whether any objection could be urged against the protest after the commencement of the suit, especially in a case where no plea has been interposed to its sufficiency." This case was affirmed by the Supreme Court of the United States. (114 U. S. 576.) We are of opinion that the court below did not have jurisdiction to review the action of the officers of the land department in holding that a plat and adverse claims conform to their rules. We assume, for the sake of argument, that we have the power to inquire whether this adverse claim has been framed in accordance with the Act of Congress. We concur in the views of the Hon. S. J. Kirkwood, the secretary of the interior, in the *Case of Wallace*, 1 Dec. Dep. Int. 593: "But, if application for patent in any case should be made at a time when it is impossible to secure a survey of a claim adverse thereto, then, as the law does not require impossibilities, the adverse claimant might show the nature, extent, and boundaries of his claim as nearly as practicable from information within his reach, and present under oath his reasons for not following more clearly the regulations of your office, and submit whether, under all the circumstances, he had not properly presented an adverse claim." It is stated therein that Mr. Wallace represented that it would be impossible to procure surveys during a certain period for adverse claimants on account of the "severity of the climate" and "deep snows." The affidavits of Hoffman, Shoolbred, and Randall were filed in support of the adverse claim, and were, in substance, that the Lake Superior Lode Mining Claim is located over 11,000 feet above the level of the sea; that the snow falls in that vicinity to a great depth; and that no survey of said claim could be made

between the first day of December, 1886, and the month of July, 1887. These statements are not controverted, and must be treated as facts, and an examination of the record proves that the officers of the Bozeman Land District followed the *Case of Wallace, supra.* The plaintiffs exerted all their efforts to yield obedience to the statute, *supra,* and are entitled to vindicate their adverse claims in the courts.

We should keep in view the primary object of this legislation, which is to obtain an adjudication in a competent tribunal of the controversy of *bona fide* claimants to mineral lands, in order that the patent of the United States may be issued to the rightful party. Mr. Justice Miller, in *Rose* v. *Richmond Min. Co. supra,* said: "Looking at the scheme which this statute presents, and which relates solely to securing patents for mining claims, it is apparent that the law intended, in every instance where there was a possibility that one of these claims conflicted with another, to give opportunity to have the conflict decided by a judicial tribunal before the rights of the parties were foreclosed or embarrassed by the issue of a patent to either claimant." In this connection we will notice the ruling of the court that there was no allegation in the complaint that the action was brought in respect to the property mentioned in the adverse claim. Our courts have not held that this pleading was necessary, and the sufficiency of the complaint, like that before us, has not been questioned. (*Wolverton* v. *Nichols,* 5 Mont. 89; *Garfield Min. Co.* v. *Hammer,* 6 Mont. 53; *Milligan* v. *Savery,* 6 Mont. 129; *Renshaw* v. *Switzer,* 6 Mont. 464; *Flavin* v. *Mattingly,* 8 Mont. 242.) In *Garfield Min. Co.* v. *Hammer, supra,* Mr. Justice GALBRAITH, for the court, said: "Now, although the courts of this Territory, in determining the title to mining claims where there is a dispute in relation thereto in the land office, have adopted the forms of action by which title to land is tried, which may be either by the action of ejectment or to quiet title, yet the real question to be determined is, who is entitled to the patent from the United States government to the mining claim in controversy? or, in other words, who has become the purchaser of the mining claim, and divested the title of the government thereto, by complying with the requirements of the laws of Congress relative to acquiring

title to mineral lands?" This case was affirmed by the Supreme Court of the United States. (130 U. S. 291.) An abridgement of the pleadings appears in the opinions in the last case, and illustrates the general character of the allegations which are deemed material. No averment to the effect referred to by the court below is contained in the complaint in *Garfield Min. Co.* v. *Hammer*, *supra*. An analysis of the issues in the case at bar demonstrates the purposes for which the parties are engaged in this litigation, and that the adverse claim is the foundation of the action, and that appropriate relief will be granted upon the ultimate facts.

Let us examine the description of the Lake Superior Lode Mining Claim in the amended complaint: "Beginning at a stake in the eastern side line of the Young America Quartz Lode Mining Claim, being the northwest corner of said Lake Superior Claim, from which the Chimney Rocks initial point bears south, 30 deg. 40 min. west, 159 feet; thence south, 34 deg. 1 min. east, 598.5 feet, to a stake in the eastern side line of said Young America Claim, it being the southwest corner of said Lake Superior Claim, and corner No. 2 of official survey No. 65, of the so-called 'Silver Queen Lode,' hereinafter mentioned, and the northwest corner of the Homestake Quartz Lode Mining Claim; thence north, 59 deg. 23 min. east, 1,205.9 feet, to a stake, the northeastern corner of the said Homestake Claim, and the southeastern corner of said Lake Superior Claim; thence north, 34 deg. 1 min. west, 592.5 feet, to a stake the northeastern corner of the said Lake Superior Claim; thence south, 59 deg. 39 min. west, 1206 feet, to the place of beginning, containing 16.45 acres, more or less; being in township 9 south, of range No. 15 east, approximately, and on unsurveyed land."

The description of the Silver Queen Lode Mining Claim is as follows: "Beginning at corner No. 1, a limestone 24 inches by 14 inches by 6 inches, marked '1-65,' from which the Chimney of Rocks initial point bears south, 56 deg. 55 min. west, 196.5 feet; thence south, 28 deg. 34 min. east, 530.3 feet, to corner number two (2), a pine post 5 inches square and 4 feet long, marked '2-65;' thence north, 59 deg. 23 min. east, 1,140 feet, to corner number three (3), a pine post 5 inches square

and 4 feet long, marked '3-65;' thence north, 28 deg. 34 min. west, 530.3 feet, to corner number four (4), a pine post 5 inches square, 4 feet long, marked '4-65;' thence south, 59 deg. 23 min. west, 1,140 feet to corner number 'one,' the place of beginning, containing 13.87 acres, and further known as United States mineral survey number sixty-five (65)."

The accompanying plat shows each parcel of mineral land, and is a clear demonstration that this action was commenced to determine the right of possession to the same property which is claimed by the respondent.

The letters A, B, C, D, represent the corners of the Lake Superior Lode Mining Claim. The letters E, B, F, G, represent the corners of the Silver Queen Lode Mining Claim.

The main proposition which controlled the court below is the alleged fatal variance in the descriptions of the premises by the plaintiffs in the amended complaint and the adverse claim. What are the allegations of the complaint upon this subject? That the mining claim of the plaintiffs is situate in the northerly end of Henderson Mountain, in the New World Mining District, in the county of Park, formerly the county of Gallatin, Territory of Montana; that the same "is known as the 'Lake Superior Quartz Lode Mining Claim,' bounded and described" as above specified. It is also alleged that Edward Hayes discovered, June 23, 1882, said claim, and recorded his statement and notice of discovery and location thereof; that Hayes was

the grantor and predecessor in interest of plaintiffs; and that the mineral land for which the defendant filed his application for patent is part of and "wholly within the boundary of said Lake Superior Quartz Lode Mining Claim," and is 1,140 feet in length, and 530 feet in width.

What is the description of the Lake Superior Mining Claim in the adverse claim of plaintiffs? The statement of discovery thereof recites these facts: The mining claim is "designated and named the 'Lake Superior Quartz Lode Mining Claim,'" and is situate in the northerly end of Henderson Mountain, in the New World Mining District, county of Gallatin, Territory of Montana; and "bounded on the south by the Homestake Lode, and on the west by the Young America, both of which it joins." It is also stated that this claim was discovered June 23, 1882, by Edward Hayes, who caused the notice of location thereof to be properly recorded. A stake was set at the discovery shaft, and each corner was marked by "substantial posts or monuments of stone." The following description also appears in the notice: "Beginning at a stake standing on the easterly side line of the Young America Lode about 500 feet from its northeast corner; thence easterly 1,500 feet, to a stake; thence northwest 600 feet, to a stake; thence westerly 1,500 feet, to a stake; thence southwest 600 feet, to the place of beginning." It is further shown in the adverse claim that said Hayes was the grantor and predecessor in interest of the plaintiffs, and that the Silver Queen Lode Mining Claim is located within the boundaries of the Lake Superior Lode Mining Claim, and is 1,140 feet in length and 530 feet in width. There is no variance in the respective descriptions, of which the law would take serious notice, and the material parts are in harmony.

It is true there were discrepancies which were produced by the omission of the plaintiffs for the foregoing reasons to have a survey of the premises made in conformity with the regulations, and the substitution of the best evidence in lieu thereof. This, however, is the inevitable result when the metes and bounds of a lode mining claim are defined at the time of discovery and location by a person who is not a mineral land surveyor. The general course of the fourth or last line of the Lake Superior Lode Mining Claim is stated to be southwest,

when it should have been southeast, but the terminus is the place of beginning, and the mistake is harmless. Said the court in *Castro* v. *Barry*, 79 Cal. 448: "The wrong course is controlled by the directions to go 'down the said slough' to a specified point. Courses and distances yield to visible boundaries." (*Pollard* v. *Shively*, 5 Colo. 309; *Cullacott* v. *Cash etc. Min. Co.* 8 Colo. 179.) There are also slight changes in the lengths of the end lines of the Lake Superior Lode Mining Claim which are reduced respectively from 600 feet to 598.5 feet and 592.5 feet. The lengths of the side lines are reduced respectively from 1,500 feet to 1,206 feet and 1,205.9 feet. Charles E. Tappan testified on the trial that he was a deputy United States mineral surveyor, and surveyed the Silver Queen Lode Mining Claim, and that "the Lake Superior embraced all the ground of the Silver Queen. As near as I can remember in making said survey, I found the stakes of the Lake Superior Claim on the southwest, southeast, and northeast corners of the Lake Superior Lode. I don't remember positively about the northwest corner of the Lake Superior Claim." Mr. Justice Field, in *Garfield Min. Co.* v. *Hammer*, *supra*, said: "Mining lode claims are frequently found where there are no permanent monuments or natural objects other than rocks or neighboring hills. Stakes driven into the ground are in such cases the most certain means of identification." A review of all the evidence satisfies us that the court erred in rendering judgment for the defendant.

It is therefore ordered and adjudged that the judgment be reversed, and that the cause be remanded for a new trial.

*Reversed.*

HARWOOD, J., and DE WITT, J., concur.