No. 18,814.

DONALD WALLACE, ET AL. *v.* JACOB HIRSCH.
(350 P. [2d] 560)

Decided March 28, 1960.

Mr. VICTOR F. CREPEAU, for plaintiffs in error.

Messrs. SPARKS, CONKLIN & CARROLL, for defendant in error.

*In Department.*

PER CURIAM.

JACOB HIRSCH, the defendant in error, was plaintiff in the trial court and he will hereinafter be referred to by name or as plaintiff. Donald Wallace and Phyllis Wallace, plaintiffs in error, were defendants in the trial court and they will hereinafter be referred to by name or as defendants.

Plaintiff filed a complaint in the district court of Delta County, denominating his action as a "Complaint in Action to Establish Corners and Boundaries under Chapter 118, Article 11, Colorado Revised Statutes of 1953." The defendants in their answer denied, inter alia, that this was an action under Chapter 118, Article 11, of the Colorado Revised Statutes, but nonetheless did themselves generally ask for a complete adjudication of the respective rights of the parties under Rule 105 of the Rules of Civil Procedure.

Plaintiff and defendants are owners of adjoining land situate in the North half of the Southwest Quarter and the Southeast Quarter of the Southwest Quarter, Section 20, Township 13 South, Range 91 West, 6th P.M., in Delta County, Colorado, the defendants' property lying immediately to the north of that owned by the plaintiff. The basic dispute between the parties concerns the location of the common boundary line between their respective properties, i.e., the northern boundary line of the plaintiff's property which is also the southern boundary line of defendants' property.

Both parties derive their respective titles through the same grantor, namely, one S. Arthur Wade. By warranty deed said S. Arthur Wade, on May 17, 1947, conveyed to the plaintiff a tract of land described as follows:

"Beginning at a point on the quarter section line 1879 feet north from the quarter section corner on the section line between sections 20 and 29 in Township 13 South, Range 91 West of the 6th P.M., thence North along quarter section line 630 feet; then South 63° 05′ West 2910 feet, more or less, to the SW corner of the

NW ¼ SW ¼ of said Section 20; thence East along the subdivision line 1320 feet to the SE corner of said NW ¼ SW ¼; thence South along subdivision line 235 feet; thence North 61° East 1562 feet, more or less, to the place of beginning, being a portion of the North half of the Southwest Quarter (N ½ SW ¼) and the Southeast Quarter of the Southwest Quarter (SE ¼ SW ¼) of Section Twenty (20), Township and Range aforesaid, containing 32.08 acres, more or less."

On February 17, 1953, the said S. Arthur Wade conveyed to defendants' predecessors in title the land lying immediately to the north of the land theretofore conveyed to the plaintiff. This 1953 deed expressly excepting the land theretofore conveyed to the plaintiff, said exception using the exact description as the one set forth in the plaintiff's deed.

It is agreed by both the plaintiff and the defendants that there is an error in the description contained in the plaintiff's deed from S. Arthur Wade, the same error being repeated in the exception of this land in the deed now held by the defendants. This error occurs in the description of the northern boundary of the plaintiff's property, which as indicated, supra, is the southern boundary of the defendants' land. This mis-description results from the fact that there are repugnant calls in the description. The repugnant or inconsistent calls are: "thence South 63° 05' West 2910 feet, more or less, to the SW corner of the NW ¼ SW ¼ of said Section 20." This repugnance or inconsistency results from the admitted fact that if the northern line of the plaintiff's property takes a course "South 63° 05' West 2910 feet, more or less" it will never intersect the "SW corner of the NW ¼ SW ¼ of said Section 20," and that for such boundary line to in fact intersect said corner it would have to follow a course approximately South 67° West 3070 feet, more or less, instead of "South 63° 05' West 2910 feet, more or less." In other words, the call as to course and distance is inconsistent and repugnant to the

call that said line shall terminate in the "SW corner of the NW ¼ SW ¼ of said Section 20."

Upon trial the plaintiff contended that the true boundary line was one which intersects the "SW corner of the NW ¼ SW ¼ of Section 20," regardless of the angle, whereas the defendants contended that the true northern boundary line was one which "takes a course 63° 05′ West" and proceeds 2910 feet, more or less, even though such would never intersect the "SW corner of the NW ¼ SW ¼ of said Section 20," and which if followed "2910 feet, more or less" would terminate somewhere in the SW quarter of the SW quarter of said Section 20.

Regardless of the issues framed by the complaint and answer, the case proceeded to trial with all parties asking that the trial court by its judgment correct the admitted mis-description in the deeds with which we are here concerned. After the trial the court entered a written judgment upholding the plaintiff's position and decreed that the northern boundary of the plaintiff's property is a line which intersects the SW corner of the NW ¼ SW ¼ of said Section 20, regardless of the call concerning course and distance. Also, the court ordered that the county surveyor should physically locate this boundary line as fixed and decreed by the court and should then mark the line by constructing a fence thereon, the expense thereof to be borne equally by the plaintiff and the defendants. Thereafter the defendants in due time filed their motion for a new trial, which motion was denied. However, pursuant to a stipulation between the parties the court ordered that the actual survey and construction of the fence should be delayed until the defendants decided whether to appeal the judgment or to acquiesce therein. Obviously the defendants did not acquiesce therein and have sought review of the judgment of the trial court.

At the outset it is agreed that there is an error in the description set forth in the plaintiff's deed. It is also agreed that where, as here, there is a mis-description

the court must then ascertain the true intent of the parties (S. Arthur Wade and the plaintiff) if possible from the deed itself and if not then by parol evidence which would reveal the true intent of the parties. *In Derham et al. v. Hill et al.*, 57 Colo. 345, 142 Pac. 181, this court said:

"Where there are two repugnant descriptions in a deed, 'the court will look into the surrounding facts and will adopt the description which is most definite and certain and which in the light of the surrounding circumstances can be said to effectuate most clearly the intention of the parties.' — 2 Devlin on Deeds, sec. 1038; Wade v. Deray, 50 Calif. 376.

"In construing a deed, the object is to discover and effectuate the intention of the parties to it. While that intention is to be gathered from the language and words of the deed, it should be read in the light of the surrounding circumstances at least when it is ambiguous * * *.

"When a particular of a description is plainly false, that particular should be rejected, and if enough remains to locate the land, the deed is effective . . ."

■ This court is fully justified in affirming the judgment of the trial court on the grounds that under a long-standing rule even though there be a conflict in the evidence adduced upon trial, if there is nonetheless competent and credible evidence which supports the judgment of the trial court, then the judgment must be upheld. In other words, the trial court and not this court is the trier of the facts. In this regard, a careful review of the reporter's transcript convinces us that there is ample credible evidence to support the essential findings and the ultimate judgment of the trial court.

An illustration of some of the conflicts in the evidence which have been resolved by the trial court involves the fact that the plaintiff built a fence admittedly some distance back from the boundary line he now claims. The defendants urge that by so doing the true boundary line

is where this fence is located. However, the plaintiff testified that this fence was a "barrier fence" and not a "boundary fence" and was never intended to designate the true boundary line between the adjoining properties. True, there was evidence to the contrary on this point. Suffice it to say, however, that this merely presents a conflict of evidence which the trial judge as the trier of the facts has resolved adversely to the defendants. The same observation might be made with reference to other contentions now advanced by the defendants. In other words, it is a case of conflicting evidence and we find that there is competent evidence to support the trial court's findings and judgment. We have repeatedly held that where a trial is to the court, the determination of controverted facts rests with the trial judge, and when supported by competent evidence will not be disturbed. See *Spears Free Clinic and Hospital v. Denver Area Better Business Bureau, et al.,* 135 Colo. 464, 312 P. (2d) 110.

▮ Additionally, analysis of the plaintiff's deed in and of itself leads to the inescapable conclusion that it was the true intention of the parties that the northern boundary line on the plaintiff's property should terminate in the "SW corner of the NW ¼ of the SW ¼ of said Section 20." A general rule of construction invoked in the case of repugnant calls in a deed is that courses and distances are the least reliable of all calls, and that a call which designates a point capable of precise and exact location takes precedence over a call for a course and distance if there is a repugnancy between the two. Hence, the "SW corner of the NW ¼ SW ¼ of said Section 20" describes a point on the earth's surface which can be located with mathematical certainty. So, under the general rules of construction this call takes precedence over a call for course and distance. In this connection *11 C.J.S. 597, Boundaries, Sec. 47. b.,* reads:

"A call for an established and identified corner may, unless uncertain or mistaken, control conflicting calls,

such as for quantity, course, distance, the unmarked open line of an adjoiner, or a corner or line of an adjoiner mistakenly assumed to be in the same place as the located corner."

Also, *11 C.J.S. 614, Boundaries, Sec. 51. e.,* states:

"A call, in a description, for an artificial monument, object or mark, including a call for a government corner or monument, will generally control over a conflicting call for course and distance, or, in other words, calls for courses and distances yield, or give way, to calls for artificial monuments or objects, in determining boundaries, especially where the words 'more or less' are used in connection with a stated distance, or the distance is obviously incorrect.

"The reason for the rule is that there is less likelihood of a mistake in a call for an artificial monument than in a call for course and distance, the former being the more reliable call . . ."

Patton on Titles, Second Edition, Vol. 1, Page 396, Sec. 150, states:

"Although junior in importance to monuments marking a surveyed line, any fixed or natural monument which is definite and certain will control over a statement as to quantity and over the courses and distances used in a plat or in a metes and bounds description ; . . . *Among the natural and fixed objects which are so substantial and definite as to have been considered controlling are: * * * the corner of a lot, * * * When the plat or conveyance describes a line as running to such a monument, but the course and distance given would not bring it to that point, the course and distance will be disregarded * * *"* (Emphasis supplied.)

In line with this general rule is our own decision in *Cullacott et al. v. Cash Gold and Silver Mining Company,* 8 Colo. 179, 6 Pac. 211, where it is said:

"The rule of law is, that monuments will control courses and distances, and while judges, in commenting

upon the facts of particular cases, speak of the monuments as being unquestionable, the rule is not so qualified. The material substance out of which monuments shall be made is not specified in the law. Their existence and location may become questions of fact, to be determined, like other questions of fact, according to the rules of evidence. *All other authorities on the subject assign to courses and distances the lowest place in the scale of evidence, as being the least reliable.*" (Emphasis supplied.)

True, there may not be a monument, as such, at the "SW corner of the NW ¼ SW ¼ of said Section 20," although there was some evidence that a pile of rocks had been placed at this point. Nevertheless, the "SW corner of the NW ¼ SW ¼ of said Section 20" describes a specific point which is capable of being determined with absolute certainty. Such was also the case in *Matthews et al. v. Parker*, 163 Wash. 10, 299, Pac. 354, wherein at page 355 the Supreme Court of Washington said:

"It seems to us to be too well settled to call for citation of authorities that, in a conveyance of interest in land, whether by ordinary deed or by dedication, if the description of the land be fixed by ascertainable monuments and by courses and distances, the well-settled general rule is that the monuments will control the courses and distances if they be inconsistent with the monument calls. In the description of this plat we have the north quarter corner of Section 34, a monument, as the beginning point from which the first course runs south 'to the center of Section 34,' another monument, erroneously stating the distance between those two monuments. *It is true that the center of the section is not a physical government monument, as is the north quarter corner, as we must presume, but it is a point capable of being mathematically ascertained, thus constituting it, in a legal sense, a monument call of the description.*" (Emphasis supplied.)

For all these reasons the judgment of the trial court is hereby affirmed.

MR. JUSTICE MOORE, MR. JUSTICE KNAUSS and MR. JUSTICE DOYLE concur.