## No. 19,817.

ALEX DEHERRERA, ET AL., *v.* MANASSA LAND AND IRRIGATION CO.

(379 P. [2d] 405)

Decided March 4, 1963. Rehearing denied March 18, 1963.

Messrs. BRATTON and WHITTINGTON, for plaintiffs in error.

Messrs. MOSES and DESOUCHET, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE HALL.

THIS is a proceeding for change in the point of diversion of decreed water.

In the trial court the defendant in error appeared as petitioner, and here we refer to it as such. Plaintiffs in error appeared at the time and place fixed for hearing of the petition and participated in the proceedings as protestants, and we refer to them as such.

Petitioner owns Priority No. 48, Water District No. 22, whereby it is authorized to divert from the Conejos River for irrigation purposes 73.6 cubic feet of water per second of time. The decreed point of diversion, known as Manassa Eastfield Ditch Headgate, is in Section 25, Township 34, N. Range 9 E., N.M.P.M.

Petitioner also owns priorities numbered 1, 2, 5 and 16, for a total of 58.7 cubic feet of water per second of time (together with other priorities which have no bearing on the matters here presented) of Water District No. 22. Waters represented by these priorities are all diverted at one point known as Manassa Headgate No. 3, located in Section 17, Township 33, N. Range 9 E., N.M.P.M. This point of diversion is about ten miles upstream from the decreed point of diversion of Priority No. 48.

Protestants own priorities No. 51 and No. 53, Water District No. 22, both being junior to the aforementioned priorities of petitioner. Points of diversion of priorities No. 51 and No. 53 are near midway between petitioner's Manassa Eastfield Ditch Headgate and Manassa Headgate No. 3 points of diversion.

Petitioner sought a decree authorizing it to divert 35 cubic feet of its 73.6 cubic feet of No. 48 water at its Manassa Headgate No. 3. That is, to divert 38.6 cubic feet at the decreed point of diversion and to divert 35 cubic feet at a different point of diversion some ten miles upstream.

Petitioner, through testimony of its engineer, pointed

out that to divert 35 feet of water at its Manassa No. 3 headgate above protestants' points of diversion could have an adverse effect upon the protestants. Protestants stated that they would be adversely affected by changing petitioner's point of diversion upstream.

The trial court, on February 3, 1961, entered its FINDINGS OF FACTS, CONCLUSIONS OF LAW AND DECREE. Pertinent portions thereof being as follows:

"The evidence on behalf of Petitioner discloses that the change of the point of diversion as prayed for will without doubt, incur some injury to junior appropriators whose headgates are situated between said old and the proposed points of diversion, but that by reason of permitting to remain at the original lawful point of diversion 38.60 cubic feet per second of time, any injury which might result to such junior appropriators can and will be compensated from and out of the waters remaining at such original point of diversion.

\* \* \*

"It therefore appearing that any injury which might occur to Protestants by the proposed change in point of diversion in the instant case *may well be compensated by the waters remaining at the original lawfully adjudicated headgate of the Manassa Ditch,* the change prayed for by Petitioner in its Petition, should be granted." (Emphasis supplied.)

 It having been established and the court having found that protestants would "without doubt, incur some injury" by reason of the proposed diversion of 35 cubic feet of No. 48 water upstream instead of downstream from protestants' points of diversion, it was incumbent upon the court, if possible, to devise a plan or method whereby protestants could be fully compensated for the injuries suffered, and if such relief could not be afforded, then to deny the petition. C.R.S. '53, 147-9-25; *Colorado Springs v. Yust,* 126 Colo. 289, 249 P. (2d) 151; *Terliamis v. Cerise,* 133 Colo. 329, 295 P. (2d) 224; *Means v. Pratt,* 138 Colo. 214, 331 P. (2d) 805.

██ Once it was established that injury would result from the change, then the burden was upon petitioner to present a plan or program whereby protestants would be fully compensated for their injuries. *Hallenbeck v. Granby Ditch and Reservoir Company,* 144 Colo. 485, 357 P. (2d) 358.

Petitioner, through its expert witness, apparently in an effort to submit a plan for compensating protestants, stated that not to exceed 20.9 feet of the 35 feet could be diverted at the new point without injury to protestants, but that to divert the balance of 14.1 feet would cause injury and such injury could be avoided by permitting protestants' junior priorities to be satisfied ahead of 14.1 feet of petitioner's senior priority. This is the only suggestion of compensation advanced by petitioner — a suggestion which the trial court did not choose to follow.

From the record it clearly appears that since 1934, if not before, petitioner has each year been illegally diverting No. 48 water through its Manassa No. 3 headgate. Evidence of such fact was offered and accepted for the sole purpose of negating the claim of partial abandonment by failure to divert 73.6 feet of No. 48 water at its decreed point of diversion. Though court and counsel all agreed that no rights could be acquired by these illegal diversions, yet it would seem that evidence with reference thereto must have been the controlling factor in the court's erroneous holding that leaving 38.6 feet of No. 48 water to be diverted at its decreed point would constitute compensation for injury arising out of diverting 35 feet upstream.

██ Protestants, junior appropriators, had a vested right in continuation of stream conditions as they existed at the time of their appropriations. *Farmers Co. v. Golden,* 129 Colo. 575, 272 P. (2d) 629.

Here, protestants had the right to have all 73.6 feet of No. 48 waters remain in the stream and to pass their headgates to be diverted at the Manassa Eastfield Head-

gate. Presumably the trial court felt that this was a valuable right, for it decreed that injury resulting from diversion of 35 feet upstream:

" * * * may well be compensated by the waters [38.6 ft.] remaining at the original lawfully adjudicated headgate * * * ."

In substance, the court said to petitioners: "You have been injured. You have the right to have all No. 48 water pass your headgate. As compensation for your injuries you will have the right to have less than all of No. 48 waters pass your headgates."

Clearly the court used protestants' rights — assets, if you please — to compensate it for its injuries. Compensation should have come from petitioner's assets.

No doubt the trial court was influenced by the long-continued illegal diversions and concluded that protestants would be better off with 35 feet of decreed upstream diversions than they had been during the past twenty-six years, during which period of time there had on many occasions been upstream diversions in excess of 35 feet.

The decree permits petitioner to profit, at the expense of protestants, by reason of its long-continued unlawful diversions. Such decree is erroneous and must be vacated.

The judgment is reversed and the cause remanded for further proceedings, including additional pleadings of the parties here, if desired; the taking of such other and further testimony as any party may offer, and for findings, conclusions and decree not inconsistent with the views herein expressed.

MR. JUSTICE DAY and MR. JUSTICE MCWILLIAMS concur.