Roy HARVEY, Merle M. Harvey and Verl Jacques, Plaintiffs-Appellees,

v.

Orvil K. DAVIS and Juanita M. Davis, Defendants-Appellants,

v.

Jeris A. DANIELSON, State Engineer of the State of Colorado; Lee Enewold, Division Engineer of Water Division 5, State of Colorado; and Mark Klocker, Water Commissioner of the State of Colorado, Defendants-Appellees.

No. 80SA539.

Supreme Court of Colorado, En Banc.

Dec. 20, 1982.

Williams, Turner & Holmes, P.C., J. D. Snodgrass, Grand Junction, for plaintiffs-appellees.

Harshman & Deister, Thomas M. Deister, Grand Junction, for defendants-appellants.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., William A. Paddock, Asst. Atty. Gen., Natural Resources Section, Denver, for defendants-appellees.

LEE, Justice.

This is an appeal from a judgment entered in the Water Court for Water Division No. 5, concerning water rights in the Wallace Gulch located on the Grand Mesa in Mesa County. We affirm.

The appellants, Orvil K. Davis and Juanita M. Davis (Davis), own the Bacon Irrigat-

ing Ditch, with an adjudicated absolute right to .7 cubic feet per second of water from the Wallace Gulch pursuant to a 1909 decree. The appellees, Roy Harvey, Merle M. Harvey, and Verl Jacques (Harvey), own adjudicated absolute water rights junior in priority located upstream along the Wallace Gulch. The waterways of the Wallace Gulch include a central channel and two tributaries running from south to north.[1]

The facts giving rise to this litigation are as follows. During a drought in 1976, Davis made a call for water adjudicated to the Bacon Irrigating Ditch and state water officials stopped the upstream appropriation of Harvey so that sufficient water would flow downstream to supply the Davis call. Harvey then ordered a survey of the Wallace Gulch to determine the location of Davis' decreed point of diversion. The language of the 1909 decree to the Bacon Irrigating Ditch described the location of the headgate as follows:

> "[T]he headgate of said ditch is located on the left or west bank of the Wallace Gulch, from which it derives and diverts its supply of water at a point ten rods west and 30 rods north of the southeast corner of Lot 3, Section 19, Township Ten South, Range 96 west of the Sixth Principal Meridian, in water district number 42 in Mesa County, Colorado."

The survey of the area revealed that the courses and distances description in the 1909 decree placed the Davis headgate on the eastern stem of the Wallace Gulch at an unnamed tributary, which location differed from the site where Davis had maintained a point of diversion on the westerly side of the center stem of the Wallace Gulch. Placement of the headgate on the westerly side of the center stem allowed Davis to collect water from both the center stem and the western stem, whereas, according to the survey, the point of diversion located on the eastern stem was above the point of confluence of the three stems. At the surveyed point of diversion water from both the center and western stems would not be accessible to the Bacon Irrigating Ditch.

In 1977, the state engineer advised Davis that the point of diversion should either be changed to coincide with the 1909 decree, or a water court adjudication should be conducted to change the decreed point of diversion. Davis chose to move the point of diversion close to the point indicated by Harveys' survey, along the eastern stem of the Wallace Gulch, rather than to adjudicate a new point of diversion. At the surveyed location the headgate on the eastern stem was separated from the water flowing down the center and western stems of the gulch by a natural earth embankment. In order to divert the center stem water over to the newly located headgate, Davis destroyed the natural earth embankment separating the east and center stems. Davis then made a call on the Wallace Gulch system, shutting down the upstream junior appropriations of the Harveys.

Harvey filed suit in 1978 to enjoin Davis and the state water officials from continuing to restrict their water delivery in order to fulfill the Davis call. At pre-trial conference the parties stipulated that the proper point of diversion for the Bacon Irrigating Ditch was fixed by Harvey's survey interpreting the 1909 decree. It was also stipulated that Davis had restructured the west bank of the main channel in order to divert water from the central channel, from which Harvey had derived his water supply upstream. It was also stipulated that if the Davis water rights emanate from a source separate from that of Harvey's upstream appropriation, Harvey's water rights should not be curtailed to supply the water rights of Davis; however, if the court found that the proper source of water for both the plaintiffs and the defendants is the same central channel, the Harvey junior water rights would be subject to curtailment to satisfy the Davis call.

Trial was conducted in 1979, and the trial court characterized the evidence as conflicting as to the historical location of the Bacon Irrigating Ditch headgate, as to the meaning of "Wallace Gulch," and as to the his-

---

1. The water court characterized Wallace Gulch as a system consisting of "three stems, the center stem contributing a more reliable source of supply than the east stem."

toric rate of flow in the east stem. No witnesses were available to testify as to the 1909 location of the headgate, although some witnesses testified as to their actual knowledge of the Wallace Gulch dating from the 1930's forward. The court found that the Wallace Gulch referred to a system of three branches emptying into a central channel. The courses and distances description in the 1909 decree placed the point of diversion along the unnamed eastern tributary to the central channel of the Wallace Gulch, a source of supply separate from the central channel along which the Harvey headgates were located. The court held that the description in the 1909 decree controlled. The court enjoined the Davises from limiting the "delivery of water to supply plaintiffs' [Harvey] water rights in the Wallace Gulch system in order to deliver water to the Bacon Irrigating Ditch."

Davis now appeals the rulings of the trial court.

## I.

The appellants argue that the 1909 decree described two separate points of diversion because one portion of the description places the headgate on the left or west bank of the center stem of the Wallace Gulch, while the courses and distances description would locate it on the south or southwest bank of the unnamed east stem, and not as described in the decree.

The appellants contend that a stream or waterway is a natural object which should be entitled to legal superiority over a conflicting course and distance description, *Wallace v. Hirsch,* 142 Colo. 264, 350 P.2d 560 (1960); and, therefore, the reference to the left or west bank of the Wallace Gulch in the decree should control the location of the headgate. It is asserted that Wallace Gulch is a clear and specific waterway, identified in the testimony of nine witness-

es as the central channel (referred to by the court as the center stem of the Wallace Gulch system). Therefore, Davis argues, the headgate should be located on the center stem, and the courses and distances description should be disregarded.

■ We do not agree. Where there appears to be an inconsistency in a legal description, the court's duty is to discern the intent of the original appropriators who were decreed the .7 cubic feet per second of water along the Wallace Gulch. The court must adopt a description which is most definite and certain and which will most clearly give effect to the intention of the appropriators. *See Wallace v. Hirsch,* 142 Colo. at 268, 350 P.2d at 560 (1960). In this case, the only direct evidence of the intent was the 1909 decree itself. No witnesses had personal knowledge of the location of the point of diversion in 1909.[2] However, evidence was presented that the eastern stem had historically carried sufficient water to irrigate 40 acres, the use for which the appropriation of .7 cubic feet per second of water was originally adjudicated to the Bacon Irrigating Ditch.

■ The reference to the "left or west bank of the Wallace Gulch" should not be considered controlling since it does not describe a precise location. Such a description could apply equally well to any number of points along the Wallace Gulch. In addition, the testimony of those witnesses who were familiar with the Wallace Gulch in recent years would not be probative of the location of the headgate in 1909, since, as the defendants have physically demonstrated, the headgate may have been relocated without further adjudication in the interim between the 1909 decree and the 1930's, the earliest date to which the witnesses could testify. In fact, the appellees allege that there were several headgate locations throughout the years.

2. Evidence was before the court that there were no adjudicated appropriators upstream from the diversion of the Bacon Irrigating Ditch as of 1909. Only two other appropriators were then diverting water on the Wallace Gulch, and both were located downstream from the Bacon Irrigating Ditch at points past the convergence of the three stems into one channel; thus, a headgate on any one of the three stems would be subject to curtailment of diversion to satisfy a call by the downstream senior appropriators. Therefore, other than the 1909 decree itself, there is no information before the court which would precisely locate the Bacon Irrigating Ditch headgate at that time.

The trial court held that the courses and distances description in the decree, which fixed a particular point of diversion along the eastern stem, was controlling. When the evidence is in conflict, an appellate court will not reverse the findings of the trial court if supported by competent evidence. *Castner v. Richardson,* 18 Colo. 496, 33 P.163 (1893). The record contains sufficient competent evidence to sustain the trial court's resolution of this factual matter.

## II.

■■■■ The proper situs of a water right is the point of diversion. *West End Irrigation Company v. Garvey,* 117 Colo. 109, 184 P.2d 476 (1947). The waters available at the decreed place of diversion as of the date of the decree constitute the source of supply. *Granby Ditch and Reservoir Co. v. Hallenbeck, et al.,* 127 Colo. 236, 255 P.2d 965 (1953); *DeHerrera, et al. v. Manassa Land and Irrigation Co.,* 151 Colo. 528, 379 P.2d 405 (1963). Although the point of diversion may be changed in some instances, section 37–86–111, C.R.S.1973, the statute provides an exclusive remedy, and the change must be accomplished without harm to other appropriators. *Corey v. Long,* 111 Colo. 146, 138 P.2d 930 (1943).

■■■ The parties stipulated that the proper location for the point of diversion was the place indicated by the plaintiffs' survey. Moreover, the headgate was moved to the east stem to comply with the survey. To allow Davis to now move the point of diversion or to restructure the channel to gain access to center stem water could result in the curtailment of the Harvey's diversion and could also permit injury to the other appropriators along the Wallace Gulch. *DeHerrera v. Manassa Land and Irrigation*

*Co.,* 151 Colo. 528, 379 P.2d 405 (1963); *compare Brighton Ditch v. City of Englewood,* 124 Colo. 366, 237 P.2d 116, (1951).[3]

We agree with the trial court that the courses and distances description, which fixes a definite location, should mark the proper point of diversion for the Bacon Irrigating Ditch, as agreed to by the plaintiffs in their stipulation.[4] Since this location was on the eastern stem, a source of supply separate from that of the Harvey's upstream source of supply on the center stem, the trial court's order enjoining further curtailment of the use of water by the upstream appropriators was correct. *Granby Ditch and Reservoir Co. v. Hallenbeck,* 127 Colo. 236, 255 P.2d 965 (1953).

The judgment is affirmed.

LOHR, J., does not participate.

---

**3.** We expressly disapprove of the defendants' action to "restructure" the Wallace Gulch system and thereby change the pattern of flow past their headgate. This self-help remedy runs counter to the law governing the appropriation of water in this state, which is based upon diversion of natural flow at the decreed headgate location. To allow such interference with the administration of water rights in this state could seriously disrupt the system now in effect.

**4.** The testimony regarding the historic location of the Davis headgate along the center stem does not change this result. The location of the headgate at a place other than the adjudicated point of diversion would not affect the Davis' entitlement to the water. Adverse possession was not pled or argued, nor would it be available in a situation such as this. *See DeHerrera v. Manassa Land and Irrigation Co.,* 151 Colo. 528, 379 P.2d 405 (1963).