[No. 4216.]

## THE NEW CACHE LA POUDRE IRRIGATION CO. V. THE WATER SUPPLY AND STORAGE CO.

| 29  | 469 |
| e33 | 399 |
| f33 | 402 |

| 29  | 469 |
| e35 | 116 |
| d37 | 532 |
| 37  | 533 |
| 37  | 534 |
| f37 | 537 |

1.  WATER RIGHTS—CHANGE OF POINT OF DIVERSION—STATUTORY CONSTRUCTION.

The act of April 6, 1899, Session Laws 1899 page 235, providing that persons desiring to change the point of diverting water from any stream shall procure a decree for that purpose from the district court which issued the original decree after due notice to all parties who may be affected by such change, is valid and provides an exclusive remedy and method of making such change and applies as well where the qualified right to make such change existed prior to the passage of the act.

2.  SAME—PUBLIC POLICY.

The objects of the statute relating to the change of the point of diversion of water for irrigation are, *inter alia*, to protect public officers in distributing water for irrigation, to preserve the peace and avoid a multiplicity of suits and their necessary costs, and parties may not by their conduct or by waiving their purely private rights, render nugatory such statute, or relieve a person desiring to make such change from following the procedure prescribed, and it is the duty of the court to enforce the statute and *sua sponte* to require that all persons who may be affected by the desired change be notified of the proceeding and given an opportunity to be heard.

*Appeal from the District Court of Larimer County.*

Mr. H. N. HAYNES and Mr. PLATT ROGERS for appellant.

Mr. JAMES W. MCCREERY for appellee.

CHIEF JUSTICE CAMPBELL delivered the opinion of the court.

The appellee is the owner of the Larimer county ditch and the appellant of the Greeley Canal No. 2 By the decree rendered in the statutory proceedings

for the adjudication of the priority of rights to the use of water for irrigation in water district No. 3, in which the Pioneer ditch and these ditches are situate, the earliest priority of the Pioneer ditch was No. 5, that of the Greeley canal No. 37, and that of the Larimer county ditch No. 100. Of the three, the headgate of the Larimer county ditch is farthest up the stream; next in order that of the Pioneer ditch; and several miles below is the headgate of the Greeley canal. The Pioneer ditch was taken out to irrigate lands belonging to its owner, and these lands, together with a five-sixths interest in the priority of the Pioneer ditch, were bought by appellee company, which sought to change the point of diversion from the headgate of the Pioneer to the headgate of the Larimer county ditch, higher up the stream, and to use the water thus transferred upon lands of its stockholders lying thereunder.

This purchase was made in the year 1898, and, as it is claimed, the actual change in the point of diversion as to a portion of the purchased water right was made during the irrigating season of that year. At all events, appellee seems to have obtained. permission of, and secured the proper order from, the superintendent of irrigation of division No. 1 of the water district for the change, which order was afterwards by his successor revoked, followed by a refusal of the officer further to recognize appellee's alleged right to continue to divert the water at the upper headgate, and an avowal of his intent to turn it into the Pioneer ditch, according to the requirements of the original decree.

June 1, 1899, the appellee (as plaintiff) brought this action against the appellant company and the superintendent of irrigation and the water commissioner

of division No. 1 of the water district, alleging that these defendants deny its right to make, and are confederating together to prevent, the change in the point of diversion of the waters theretofore belonging to the Pioneer ditch purchased by the plaintiff, and to interfere with plaintiff's right to have the same flow through, and to be utilized by means of, the Larimer county ditch.  An injunction to restrain defendants was asked.  The defendant company (appellants here) contested the right to change the point of diversion and the place of use, and upon these issues the findings of fact were in favor of the plaintiff. The court found that plaintiff (appellee) had purchased the water right in question, and that the contemplated change in point of diversion did not injuriously affect defendant (appellant), or any other appropriators of water from the Cache la Poudre river, the common source of supply.  Upon the findings a decree was entered quieting title in plaintiff to  24.66 cubic feet of water per second of time, representing the 5-6 interest in the priority decreed to the Pioneer ditch.  And the defendants, and each of them, were restrained from interfering in any manner with the plaintiff in the transfer of such appropriation from the Pioneer to the Larimer county ditch, or with plaintiff's contemplated change of place of use of the same.

Of the defendants the appellant company alone has brought the case here by appeal alleging that numerous errors were committed by the trial court. Only one of them we shall consider, which is that the court erred in not dismissing the action for a failure upon the part of the plaintinff to comply with the provisions of an act of the general assembly entitled, "An act in relation to irrigation," approved April 6,

1899, Session Laws 1899, p. 235, section 1 of which reads:

"Every person desirous of changing the point of diversion of his right to use water from any of the streams of this state, shall present his petition to the district court from which the original decree issued, praying that such change may be granted to him, and the practice and procedure on the hearing of such petition shall be the same as if said petition were for an original decree. The court shall require proof that all parties who may be affected by such change have been duly notified of the proceeding; and shall hear evidence to determine whether or not such change will injuriously affect the vested rights of others in and to the use of water; and if the said court shall find that such change will not injuriously affect the rights of others, a decree shall be entered allowing said party to make such change."

Section 2 provides, if such a decree is granted, that the party desiring the change is required to prepare two accurate maps showing the old and new ditches, the surrounding lands and the lands of other owners in the vicinity in the same manner as required in the case of original appropriations of water, one of which, together with a certified copy of the decree, must be filed with the county clerk of the county in which the headgate of the ditch sought to be changed is situate, and another copy with the state engineer. When that is done, the state engineer is required to issue a notice to the water commissioner having jurisdiction of the ditch notifying him of the change made, and thereupon the water commissioner shall allot the priority of right to the use of water to the new ditch which formerly was allotted to the original ditch, and

shall recognize such change in the distribution of water.

An examination of the act discloses that it does not, in terms, apply to a change in the place of use but only to changing the point of diversion. Whether when unaccompanied by the latter, or at all one desiring to change only the place of use must comply with this act before such change can be made, we need not determine; for here appellant and appellee seem to have treated the two questions as practically identical, as constituting but a single issue, and as dependent one upon the other, and governed by the same evidence.

Some questions were brought into the case which do not seem to be directly connected with the attempted change in the point of diversion, which was the principal question upon which the evidence largely bears, and in response to which most of the argument is directed. While we refrain from discussing, or deciding, the main questions submitted to the trial court, we deem it appropriate to say that much of the evidence produced by both these parties relates to the question as to whether plaintiff intended, after changing the point of diversion, to use a greater quantity of water, or for a greater length of time, than did the former owner of the Pioneer ditch in irrigating the lands for which the appropriation was originally made. The evidence was mainly directed to this issue, which is separate and distinct from the question whether appellant would be injuriously affected merely by changing the point of diversion The two issues are not necessarily the same, nor does it logically follow that a decision of one necessarily controls as to the other. Whether the place of diversion may be changed is not to be determined by

the manner of use, or by the quantity of water em-
ployed, or the length of time which the same is to be
enjoyed by the plaintiff after changing from the
headgate of one ditch to that of another, unless, of
course, the change of conditions necessarily, or by
reasonable inference, brings about an enlarged use
either in amount or time.   Though the trial court by
its decree quieted title in plaintiff to the quantity of
water so purchased, and held that the change in the
place of use was not injurious to appellant, the prin-
cipal subject of controversy was over the change of
the point of diversion.   The various questions sub-
mitted were so interwoven, not only in the pleadings
but in the evidence and findings of the court, that it
is impossible to separate them so as to determine
with any degree of satisfaction to ourselves whether
the decree may be sustained upon one or more of
these, and reversed as to the others.   We have con-
cluded, therefore, to set aside the decree in its en-
tirety for the following reasons:

There was no attempt made to comply with the
statute cited,—the plaintiff's position being that its
qualified right to change the point of diversion ac-
crued, and was effected, before the passage of the
act, which, as there was an emergency clause, was in
force April 6, 1899; and such right was, when it ac-
crued, subject to no limitation whatever, excepting
only that it could not be made if it injuriously affect-
ed the rights of other appropriators.   That the
change was not consummated is apparent from the
complaint.   While it is true that a part of the water
was used through the Larimer county ditch before
the act took effect, not all of it was.   We therefore
treat the case as one where the qualified right to
make the desired change existed, but the change was

not, before the act took effect, perfected, or recognized by others claiming injury, or by the public officers, charged with the distribution of water, when this action was begun. That is to say, plaintiff's enjoyment of the right claimed was contested by other appropriators, and prevented by the state officials on whom was devolved the duty of executing the provisions of the water decree; so that to perfect and establish its alleged right resort to the courts was necessary.

The plaintiff further says that the act itself confers no new right, but that the district court, under the constitution, possessed the same jurisdiction over the subject matter which thereby was specifically conferred upon it. In this we concur, but we cannot agree with plaintiff that it was beyond the power of the general assembly to provide as an exclusive remedy for the protection and enforcement of the vested right asserted, that which the statute furnishes. A party has no vested right to a particular remedy, and if an exclusive statutory remedy, provided for the enforcement of his previously vested right, is ample for that purpose, he must avail himself of it and can not ignore the remedy thus given and resort to a former one which the new was intended to supplant. This court has held that our so-called irrigation statutes for the ascertainment of priorities, and placing the distribution of water for irrigating purposes under control of state officers, are constitutional, though they affect rights which accrued before the enactments were made, and place upon their enjoyment limitations from which they were theretofore exempt. These statutes are upheld as a rightful exercise of the police power of the state.

This remedial statute, therefore, may be upheld

upon the same principle. Though the owner of a 'water right" has, as an incident of the ownership, the right to change the point of diversion from the natural stream and to change the place of use, *provided* always that thereby the rights of others are not injuriously affected;—still it is a lawful exercise of legislative power to require as a condition precedent to such changes that the person desiring them shall obtain a decree of the proper court allowing them upon a hearing in accordance with the procedure prescribed by this act, and after a judicial ascertainment is had that the rights of other appropriators are not injuriously affected;—though such qualified right to the changes existed before the passage of the act unencumbered with the requirement of securing judicial authority therefor.

A moment's consideration will show not only the sufficiency and wisdom, but also the validity, of this statute, even as to vested rights. Under the original water decree upon which the parties to this action rely, the water commissioner is required to distribute water as the decree specifies. One of its provisions is that the water belonging to the Pioneer ditch shall be diverted at the headgate of that ditch. It was a salutary provision for the legislature to require before a change of the point of diversion from the Pioneer to the Larimer county ditch should be made, that the party desiring it should, in a proceeding where all the parties affected might be heard, obtain a judicial ascertainment that the change would not injure them.

Possibly if only the rights of the parties to this appeal were involved, we might not feel justified in insisting that the procedure prescribed by the statute should be followed, for it may be, though we do not

so hold, that appellant by its conduct has waived its purely private right to insist upon it. But the interests of the state are involved, and its rights should be protected, and parties may not by their conduct render nugatory a statute whose objects, *inter alia*, are to protect public officers in distributing water for irrigation, to preserve the peace, and to avoid a multiplicity of suits and their unnecessary costs.

Doubtless the general assembly also had in view the desirability of relieving its executive officers of the necessity of determining for themselves and at the risk of law suits and probable damages for their act, the right of a party to make such a change as is contemplated here. At any rate, this statute is a beneficent one, and it is the duty of the courts to enforce it, and *sua sponte* to require that all persons who may be affected by the desired change shall be notified of the proceeding and given an opportunity to be heard. The parties to this appeal have taken a large amount of testimony bearing, or supposed to bear, upon the alleged injury which the appellant will suffer if the point of diversion is changed. To save costs the legitimate evidence taken upon the hearing below responsive to that issue may be used by them in case of further proceedings under the statute. They may introduce other evidence if they desire. Others who may be made parties to the proceeding, of course, cannot, without their consent, be bound by this evidence, and are at liberty to make their own showing upon the issue to be joined in the statutory proceeding.

The decree is reversed and the cause remanded. And since this action was brought and tried by the same court which rendered the so-called water decree that defined the then existing rights of the par-

ties, the trial court is instructed, if plaintiff so elects, to treat the complaint in this case as a petition under the statute; and if the parties make such request, grant them leave to amend their pleadings so as to conform to the procedure prescribed by the statute, and that such further proceedings, if any, be had herein as are consistent with the views expressed in this opinion, and in accordance with the provisions of the remedial statute of 1899 governing the same. If, however, plaintiff elects not to proceed further with this action, as thus modified, the district court is instructed to dismiss the same at plaintiff's costs.

*Reversed.*