## No. 13,540.

### JAMES *v.* BARKER ET AL.
(64 P. [2d] 598)

Decided December 9, 1935. On rehearing original opinion adhered to January 11, 1937.

Mr. PERRY BEHYMER, Mr. H. A. HICKS, Mr. H. A. HICKS, JR., for plaintiff in error.

Mr. HARRY E. MAST, for defendants in error.

*En Banc.*

Mr. Justice Holland delivered the opinion of the court.

A deed of trust was given on certain lands and water rights, by the owner, who also was the owner of supplemental water rights represented by certificates of stock in two reservoir companies. This stock was pledged as additional security to the deed of trust which was regularly foreclosed on all land and water rights specifically mentioned therein, in full satisfaction of the principal of said loan, and all charges thereon, and the trustee's deed, by its printed form, conveyed all "appurtenances thereunto belonging." The foreclosure sale was to the successor of the grantee, who was the holder of the pledge of the additional shares of stock, and who continued to hold same under claim of ownership, by conveyance, evidenced by the trustee's deed, claiming that the shares of stock represented supplemental water rights connected with the land conveyed and were "appurtenant thereto." This suit is by the successor in interest of the grantor named in the deed of trust, to recover the water rights represented by the stock certificates or their value. Judgment below was for defendants. The plaintiff contends that the obligation represented by the deed of trust was fully discharged by the trustee's sale of the land and water rights described therein, and that since the shares of stock were pledged only as additional security, and there being no deficiency remaining after the sale in foreclosure, to which the additional security might have been applied, that the certificates are being illegally withheld from plaintiff.

The Nonpareil Investment Company, on November 19, 1919, owned two eighty-acre tracts of land in Crowley county, Colorado, each having a full paid perpetual water right in the Colorado Canal. It also was the owner at that time of 160 shares of the capital stock of the Twin Lakes Reservoir and Canal Company, and 160 shares of the capital stock of the Lake Meredith Reservoir Company. On that date, it executed and delivered to A. F.

Enyart of Crowley county, its promissory note in the sum of $15,000, bearing eight per cent interest per annum. To secure payment thereof, it on the same day, executed its deed of trust to the public trustee of Crowley county, conveying the two eighty-acre tracts of land together with one full paid eighty-acre water right with each tract, in the Colorado Canal, and in addition thereto, pledged as additional security, the 160 shares of capital stock in each of the reservoir companies, by endorsing the certificates in blank and depositing same with the grantee. These shares were not mentioned in the deed of trust. In March, 1920, the Nonpareil Company conveyed to James, plaintiff in error, one of said eighty-acre tracts together with full paid water rights in the Colorado Canal, and assigned to James 80 shares of Twin Lakes stock, and 80 shares of Lake Meredith stock. April 22, 1920, it conveyed the other eighty-acre tract to James with one full paid eighty-acre water right and assigned to James 80 shares of Twin Lakes stock and 80 shares of Lake Meredith stock. This represented all of the shares of stock of the reservoir companies then owned by the Nonpareil Company. In January, 1921, James sold to one Lyles, with the express consent of Enyart, the grantee and holder of the note and pledges heretofore mentioned, 30/80th of the Colorado Canal water right, 30 shares of the Twin Lakes stock, and 30 shares of the Lake Meredith stock. The sale was effected by a partial release of the deed of trust by Enyart and the property transferred by deed of conveyance through the public trustee. The transfer of the shares of stock was effected by Enyart handing the certificates to James who surrendered them for cancellation, and he had issued in lieu thereof, certificates to Lyles for the 30 shares he had bought in each corporation, and new certificates for the remaining shares owned by James which were then redelivered and repledged to Enyart, to be held in connection with the security for the deed of trust. James re-

ceived $3,000 from the sale of this stock, and applied $2,000 as a payment on the principal and $500 on interest.

November 1, 1927, notice of election and demand for foreclosure of the trust deed was recorded by the owner of the note and the public trustee pursuant thereto caused publication of notice of trustee's sale. This published notice contained the description of the land and water rights specifically named in the deed of trust. Sale was had December 3, 1927, at which the owner of the note was the only and successful bidder, his bid of $24,609.99, being the full amount of the unpaid principal, together with interest acrued and all other charges, leaving nothing due on the note. None of the shares of stock of the reservoir companies was advertised for sale or sold. Certificate of sale issued, and at the expiration of redemption period, trustee's deed was delivered to holder of the certificate, conveying the land and water rights described in the deed of trust, the deed containing the usual, "together with all and singular the privileges and appurtenances thereunto belonging" clause, which also appears in the deed of trust.

At the time of the transfer by plaintiff to Lyles of a portion of the reservoir rights evidenced by these certificates of stock hereinbefore mentioned, plaintiff executed to Lyles, a "Deed of Transfer of Water Rights" in which reference was made to these *stock* shares, as supplemental water rights attached to thirty acres of land described in the "water deed" and the certificates of stock, and relinquished and surrendered all right to the further and future use of the water represented thereby on any part of the lands to which the rights then attached. The purpose was to enable Lyles to transfer the rights to other land owned by him and apparently was an acknowledgment by plaintiff that the water rights represented by the stock certificates, were appurtenant to a certain tract of land.

The by-laws of both reservoir companies contain a provision to the effect, that in order to obtain and hold

shares of stock, it was necessary to own land susceptible of irrigation from the Colorado Canal, to which rights from the Colorado Canal then attached. It would then be possible for a person to own rights in these two reservoir companies for supplemental use, and a share of stock could be had for each acre of land owned. In other words, rights under the Colorado Canal could be owned, without ownership of stock in reservoir companies, but there could be no ownership of stock in the reservoir companies unless the owner also held rights in the Colorado Canal. The land of the Nonpareil Company was under the Colorado Canal, to which a water right therefrom attached. This ownership qualified the Nonpareil Company to hold the reservoir stock which it owned and pledged as security for the loan evidenced by the deed of trust. The stock certificates described the exact land to which the rights they represented attached, and this land was the land described in the deed of trust which was foreclosed as hereinbefore mentioned.

The evidence tends to show that the land on which the deed of trust for $15,000 was given, if only the water right from the Colorado Canal was included, would be worth from $10 to $35 per acre, but with the supplemental rights, as evidenced by stock in the two reservoir companies, it would be worth from $100 to $125 per acre. There was over $24,000 due on the indebtedness at the time of the foreclosure.

Are these water rights, represented by the stock in the reservoir companies, appurtenances to the land involved in the foreclosure, and were they conveyed by the trustee's deed? The answer is the decision of this case. Plaintiff argues that they are not, that they may be conveyed independently of the land; further that they were pledged for use only in the event of a deficiency at sale of the land and water rights described in the deed. Defendants contend that they are appurtenances to the land covered by the deed of trust; that they are necessary to the beneficial enjoyment of the land; that the land did

not have practical value for agricultural purposes without them; that the value of the land with these supplemental water rights approximated the bid at the trustee's sale, and that it may be presumed from the circumstances existing at the time the deed of trust was given, that all these rights were intended to be included in the conveyance of the property.

■■ That all of the water rights involved were at all times used on the land, does not seem to be questioned. That they were indispensable to give to the land the value necessary to secure the amount of the loan made, is not seriously in doubt. That they were considered to be included in the transaction conveyance would logically induce the bid as made at the sale. That water rights are sometimes conveyed by a deed to land, that is silent on the subject, is settled law. *Arnett v. Linhart,* 21 Colo. 188, 40 Pac. 355; *Gelwicks v. Todd,* 24 Colo. 494, 52 Pac. 788. A water right used, as here, for the irrigation of land, will pass under the appurtenance clause in a conveyance of land, without a specific mention in the deed, if the presumption arising from the circumstances of the transaction, make it appear that it was the intention of the grantor that it should so pass. *King v. Ackroyd,* 28 Colo. 488, 66 Pac. 906.

■ The grantor in the deed of trust indicated no other intention than that the essentials for the full value, use and benefit of the land, should be had by the grantee, indeed he emphasized such intention by his pledge of the stock to the latter. Examination of these certificates discloses that they are not in the form of the ordinary stock certificate, but are special in form and contain a description of the land to which they attach. Plaintiff acknowledged this condition, in his conveyance to Lyles of part of these rights. The reservoir rights were necessary to a complete use of the land conveyed by plaintiff, and not being expressly reserved by him, they passed with the conveyance.

The judgment of the trial court was right and is affirmed.

Mr. Justice Hilliard and Mr. Justice Bouck dissent.

Mr. Justice Bouck dissenting.

Francis James, the successor of the original owner, attempts to establish his ownership and right of possession of certain certificates of stock in two reservoir companies and the water rights represented thereby. The certificates were pledged in 1919 expressly as collateral to one Enyart, contemporaneously with the execution in his favor of a deed of trust. The latter instrument expressly covered certain land and also expressly covered certain water rights which were not represented by certicates of stock but consisted of deeded water rights in the Colorado Canal. These water rights so expressly included were known as "river rights" and by this name are conveniently distinguished from the reservoir rights, the certificates whereof were pledged as aforesaid. A foreclosure sale was had in 1927 under the deed of trust. Enyart's successor in interest bid in the land and five-eighths of the mortgaged river rights at a sum which paid the mortgage indebtedness in full. The trustee's certificate of purchase, issued to the bidder, described the land and river rights so bid in, but mentioned nothing else, not even "appurtenances." There was admittedly no sale of the pledged certificates of stock or of the reservoir rights which they represented. I think it is clear that, when the foreclosure sale under the deed of trust paid the entire indebtedness, there was no right to sell or foreclose on the pledged certificates, as there would have been if the foreclosure sale had failed to bring the full amount of the debt. The pledgee did not acquire title to the pledged property. He could not unless there was a lawful sale of them. 49 C. J., page 975, §190. And the successor of the owner who both mortgaged and pledged is entitled to reclaim the pledge in view of the satisfac-

tion, by foreclosure sale under the trust deed, of the entire indebtedness.

The judgment of affirmance by the majority of this court, denying the original mortgagor's successor in interest the right to recover the above described certificates of stock rests on what I regard as a manifestly erroneous proposition, namely, that though the certificates of stock representing the reservoir rights were independently pledged as collateral security exactly as personal property is often pledged by many another debtor, and though they were not mentioned in the deed of trust as were the river rights, the reservoir rights nevertheless passed as "appurtenances" of the land covered by the deed of trust. This, I think, is a fallacy.

Of course, water rights like the aforesaid river rights, as distinguished from the reservoir rights, may be and often are expressly conveyed by deed, mortgage or other written instruments. There may be a similar express conveyance of water rights that are represented, as were the reservoir rights here, by certificates of stock. *Thompson v. Rowe,* 27 Colo. App. 361, 149 Pac. 849.

The reservoir rights are claimed here, however, by the mortgagee's successor on the theory that they, though unmentioned, were nevertheless covered by the realty mortgage as appurtenances and passed as such by foreclosure sale and the deed thereafter executed. Of course, water rights are in special circumstances sometimes deemed to pass by deed as appurtenances, without any specific mention of them in the conveying instrument. This court said in *Arnett v. Linhart,* 21 Colo. 188, 190, 40 Pac. 355: "Although a water right may be appurtenant to the land, it is the subject of property and may be transferred either with or without the land. *Strickler v. City of Colorado Springs,* 16 Colo. 61 [26 Pac. 313]. Being therefore a distinct subject of grant, and transferable either with or without the land, whether a deed to land conveys the water right depends upon the intention of the grantor, which is to be gathered from the

express terms of the deed; or, when it is silent as to the water right, from the presumption that arises from the circumstances, and whether such right is or is not incident to and necessary to the beneficial enjoyment of the land.'' That, naturally, can refer only to facts and circumstances proved by competent evidence to have existed at the time the original conveyance was made. Such facts and circumstances are wholly absent from the record before us.

In the present case the original segregation of the shares of stock in the reservoir company could not have been effected or preserved more carefully or in a more formal way. In the deed of trust the land is minutely described, as are the river rights, with no expression like that—for example—which is quoted in *Caldwell v. States,* 89 Colo. 529, 535, 6 P. (2d) 1, 3. On the contrary, the record here proves that the original parties by their deliberate choice handled the stock separately by way of pledge as security additional to and separate from the mortgage incumbrance by deed of trust. If ever the old law maxim, expressio unius est exclusio alterius, applied, it would seem to apply here. All the documents in evidence consistently reveal and emphasize this. In other words, the original parties contemplated that river rights were to be foreclosed on under the deed of trust, and the reservoir rights by independent foreclosure of the pledge if at all.

That the separation was a natural and intentional one is subsequently shown by the actual sale of nearly half the stock to a third party, for use on altogether different land lying miles away.

Had there been no pledging of the certificates of stock, and had there been no mention of any water rights at all in the deed of trust, then, to be sure, under the doctrine laid down in *Arnett v. Linhart, supra,* and numerous other decisions of this court, it would have been proper at the trial to inquire into the facts and circumstances surrounding the original mortgage transaction, for the

purpose of ascertaining therefrom if possible what the mortgagor, grantor in the deed of trust, intended at the time the instrument was executed. Then, if it had been duly proved that at that particular time, in 1919, the mortgagor intended to have the water rights pass as "appurtenances" of the land in spite of the fact of their not being mentioned in the instrument, the intention could properly have been given effect by the court.

Such is not the present case under the evidence disclosed by the record.

There was obviously no evidence whatever as to the intention of the mortgagor in 1919, when the deed of trust was executed. Neither circumstantial evidence nor direct evidence was introduced tending even in the slightest degree to show that the beneficial enjoyment of the land in 1919 necessitated the use of the reservoir rights. There was merely an attempt to show that such a necessity existed in 1927, eight years later, after a substantial part of the water rights had indeed been separated and conveyed away by mutual consent.

Furthermore, the 1919 conduct of the original parties, in giving and accepting as collateral the pledged reservoir stock, plainly indicated a purpose to deal with the water rights thereby represented in the usual normal way as capital stock, which is personal property, though it of course symbolized real property that consisted of the water rights corresponding to the stock.

A similar purpose appears from the conduct of the parties a little later, in 1920, when, as already mentioned, the mortgagor's successor sold nearly half his reservoir rights. These were thereupon used in connection with land seven and more miles away, the mortgagee surrendering the pledged stock for the purpose of such sale, thereby permitting the transfer to the purchaser of what now are claimed to have been water rights indispensable to the beneficial enjoyment of the originally mortgaged land. The mortgagee's acceptance of new certificates for a much smaller amount of the reservoir stock seems

to be the best possible refutation of the present argument put forth by the defendants in error, namely, that the reservoir rights were indispensable for the use of the original land and were intended to be deemed as necessary appurtenances at the very time when the mortgage was executed. The record discloses nothing as to the value of the land either with or without the reservoir or other water rights, except as and until the witnesses testified about conditions at a point of time eight years after the giving of the mortgage.

Similarly, the mortgagee recognized the distinction and acknowledged the separation of the two kinds of water rights, by executing a formal release—from the lien of the mortgage—of a corresponding portion of river rights expressly mentioned in the instrument and deliberately sold by the successor of the mortgagor at the same time. The reservoir rights, on the contrary, were not mentioned in the release.

By the unequivocal acts and conduct of the parties to the deed of trust, the stock certificates were excluded from this instrument. Furthermore, the foreclosure sale, at which the property expressly included in the deed of trust was bid in by the mortgagee's successor at the exact amount then due, necessarily and automatically nullified the lien theretofore resting upon the pledged certificates of reservoir company stock. These certificates now, according to my view, belong to the plaintiff in error and should be turned over to him.

The judgment should be reversed. A judgment in favor of the plaintiff in error should be entered in this court, or else this court should direct the lower court to enter such a judgment there.

For the reasons I have stated, I dissent.

Mr. Justice Hilliard concurs in this opinion.