No. 15,298.

COREY *v.* LONG ET AL.
(138 P. [2d] 930)

Decided May 17, 1943.   Rehearing denied June 21, 1943.

Mr. ELAM B. UNDERHILL, for plaintiff in error.

Messrs. McMULLIN, STERNBERG, HELMAN & YOUNGE, for defendants in error.

*En Banc.*

Mr. Chief Justice Young delivered the opinion of the court.

This cause is before us on writ of error to review a judgment of the district court of Mesa county quieting the title of defendants to a certain water right as against any claim of plaintiff, and enjoining the latter from interfering with defendants' use thereof. The parties are here in the order of their appearance in the district court and they will be designated herein as there, that is, as plaintiff and defendants, or by name.

Plaintiff, and defendants Long and Jones, are users of water from a natural stream known as Big Creek, under appropriation made by their immediate, or remote predecessors in title.

Defendants have the senior appropriation for 1.026 cubic feet of water per second with a priority date of March 1, 1901; plaintiff has the junior appropriation for .47 of a cubic foot per second of time with a priority date of June 16, 1921. In the record of the district court, defendants' senior priority decreed to the Gibson ditch is numbered 259, and the Gibson ditch is numbered 203; plaintiff's junior priority decreed to the Beldon Waste and Seepage ditch is numbered 529 and the ditch is numbered 382. The decree awarding defendants' priority was entered in 1916, plaintiff's in 1941. Plaintiff instituted his action in the district court in 1939, basing it upon a then undecreed appropriation. The fact of the entry of his decree in 1941 was set up by a supplemental complaint which the court permitted him to file.

The particular fact situation that gave rise to the litigation as disclosed by the record is substantially as follows:

In 1901, when defendants' predecessor in title, Gibson, initiated his appropriation, he located the headgate of

the Gibson ditch at a point down stream approximately 700 feet below the headgate of the Gibson ditch as located at the time this litigation began. It seems clear that the reason for changing the headgate to a point farther up on the stream was due to the fact that the ditch as originally constructed had so little fall that, as one witness who worked on it expressed it, "the back end of the ditch was in front." The intake was changed to the higher point on the stream in 1907. It was many years before plaintiff·acquired any interest in the place now watered by the Beldon Waste and Seepage ditch and it was nine years before the adjudication decree was entered awarding the Gibson ditch the priority date of March 1, 1901. It is equally clear that the point of diversion was moved up the stream at least fourteen years before the appropriation of water was initiated which finally resulted in the 1941 decree awarding a priority date of 1921 to the Beldon Waste and Seepage ditch. Furthermore, it appears that at the time the Beldon appropriation was initiated, and for a long time prior thereto, the present intake of the Gibson ditch was then and is now located only a short distance from the ranch buildings and dwelling house on plaintiff's ranch and that it was plainly visible to plaintiff at all times. When the point of diversion was moved up the stream, Gibson purchased a right of way for the new ditch with its headgate from the then owner of plaintiff's land—plaintiff's predecessor in title—for twenty-five dollars. The cancelled check in payment therefor and letter acknowledging its receipt bearing date of 1907, are exhibits in the case.

As to the relative priorities of plaintiff's and defendants' diversions from the stream, there can be no question under the record before us. Plaintiff's priority is junior to that of defendants.

It appears from the pleadings of the parties and from the testimony in the record, that in the statement of

claim and in the decree of 1916 awarding the priority to the Gibson ditch, the location of the headgate as therein described and fixed was through error and inadvertence that of the old headgate where the first ditch was taken out at so low a point that water could not be run effectively the length of the ditch, instead of that of the new headgate through which water was then, for a long time prior thereto had been, and still is being diverted. It is on the situation arising from this alleged mistake and its resulting consequences that plaintiff's right to the injunctive relief which he sought, if available to him, must depend. Plaintiff alleges, and there is testimony in the record, which if true would support such allegations, that between the present point of diversion of the Gibson ditch and the decreed point of diversion as described in the original statement and decree awarding priority to the Gibson ditch, there are a large number of springs along the banks of Big Creek; that by reason of the moving upstream of the point of diversion of the Gibson ditch, a distance found by the court to be approximately 700 feet, the Gibson ditch is deprived of a supply of water issuing from said springs which would be available and possibly adequate at times to supply its priority; that whenever such flow of the springs is adequate it would not require the shutting down of plaintiff's junior Beldon ditch to supply the senior Gibson ditch with water.

The controversy was precipitated when the water commissioner closed plaintiff's headgate in order to supply the Gibson ditch at the new headgate with its decreed amount of water, when, as plaintiff contended, its priority could have been filled at the old headgate without shutting down the headgate of his ditch. Clearly, if defendants' right, as against plaintiff, is only to divert at the old headgate its decreed amount of water when there is so much water there available, then defendants have no right to have plaintiff's junior ditch

shut down to supply the decreed amount of water to defendants at the new headgate if it would not be necessary to do so if the water were diverted at the old headgate; if defendants are entitled, as against plaintiff, to divert water at the new and higher headgate, then plaintiff's right being junior in time, the headgate of his ditch may be closed when necessary, to furnish at the new headgate the amount of water decreed to the Gibson ditch.

The specification of points fairly raise the question whether plaintiff is entitled to have defendants' right to have the headgate of plaintiff's ditch closed, determined on the availability of sufficient water to supply defendants' ditch at the old, or at the new headgate. They also raise the question whether defendants' changing of the point of diversion of the Gibson ditch and thereafter diverting their water through a new headgate prior to the initiation of plaintiff's right was an invasion of plaintiff's rights which he may protect by injunction.

▆ Defendants have a decreed priority to approximately one cubic foot of water per second of time, the validity of which is not in dispute, though the water is now taken at a different point of diversion from that described as the diversion point in the decree. The defendants, by changing the point of diversion, or by procuring a priority decree in which the point of diversion was erroneously described, did not thereby lose the right to the water which they had theretofore appropriated and which they have continued to use.

▆▆ The trial court properly held that a change in the point of diversion could be decreed only in a proceeding under the statute which is an exclusive remedy. *New Cache la Poudre Irrigation Co. v. Water Supply and Storage Co.,* 29 Colo. 469, 68 Pac. 781; *Fluke v. Ford,* 35 Colo. 112, 84 Pac. 469; *New Cache la Poudre Irrigation Co. v. Arthur Irrigation Co.,* 37 Colo. 530, 87 Pac. 799; *New Brantner Extension Ditch Co. v. Kramer,*

57 Colo. 218, 141 Pac. 498; *City and County of Denver v. Colorado Land and Livestock Co.*, 86 Colo. 191, 279 Pac. 46; *Dry Creek No. 2 Ditch Co. v. Coal Ridge Ditch Co.*, 109 Colo. 556, 129 P. (2d) 292. It held further, as against the plaintiff, that the amended answer contained allegations that entitled defendants to have the right to divert their water in dispute at the new headgate quieted as against the claims of the plaintiff. Plaintiff, when suit was instituted, had an undecreed water right initiated many years after the diversion on which defendants' decree of priority was based and long after defendants had diverted water through their new headgate. Plaintiff's decree adjudicating his priority, set up by way of supplemental complaint, was entered after his suit was instituted. The trial court correctly held that plaintiff, when he initiated his right, had notice of the physical conditions existing on the stream and of defendants' then open and visible diversion of water at the new headgate, and that plaintiff had failed to show a right to the water in dispute superior to that of defendants; that on the contrary, defendants had shown a right superior to that of plaintiff. The court, as against plaintiff, found only that defendants were entitled to have their right to the use of the water diverted through the new headgate quieted as a superior right against plaintiff's claim to the superior right to its use when required to fill defendants' priority. The decree was entered accordingly. It did not attempt to determine the question of whether, in a statutory proceeding to change the point of diversion, or in a proceeding to correct the alleged error in the former decree, the defendants could prevail against other parties in interest on the stream, including the public, or even against plaintiff himself. In such a proceeding public interests are involved. Here the court considered only the private interests of the litigating parties and expressly so limited the decree.

The decree is supported by reason and logic. If there was an error in the description of the location of the headgate and point of diversion in the original decree, it is readily conceivable that appropriators down the stream with rights junior to defendants' right, but senior to plaintiff's right (and it is alleged that such there are), may have an interest in and a vested right superior to that of plaintiff in having the defendants' point of diversion remain where it is presently located. Plaintiff seeks to have the point of diversion changed from where presently located and where it was located when his right was initiated and when defendants' decree of priority was entered in 1916, without other parties with interests potentially adverse to both plaintiff and defendants before the court. If plaintiff desires relief so extensive and so potentially adverse to other users who may be junior to defendants, but senior to plaintiff, he can have it only in an action in which such adverse interests are all before the court. An appropriator with a right junior to defendants' and senior to plaintiff's, diverting water below the allegedly erroneously described decreed point of diversion is potentially as much subject to being damaged by defendants' moving their point of diversion down the stream seven hundred feet, as plaintiff is subject to being damaged by its remaining where presently located. Until all interested parties are before it, the court could do no more than adjudge the relative rights of the present parties, plaintiff and defendants, which is all that was attempted to be done. The decree entered in this case can have, and it purports to have, no other or greater effect than to settle what may be described as the interim rights of two adverse claimants to water pending an adjudication in which all interested parties shall be before the court. The right to the use of the water which is quieted is not the amount of water decreed to defendants by their adjudication of priority. The right in dispute is the right to use at de-

fendants' present point of diversion whatever amount of water is necessary to fill such priority at the presently used point of diversion in excess of the water that would of necessity pass the present point of diversion to fill the priority at a point seven hundred feet farther down the stream. This, plaintiff contends, would be less than the amount presently required to fill the defendants' priority at the higher point of diversion due to the increased stream flow from seepage and springs along the seven hundred feet of stream intervening between the alleged original, and new, point of diversion. To the same extent that plaintiff's water supply available at his headgate is diminished by the maintaining of defendants' headgate at its present location, the supply of the next appropriator down the stream junior to defendants, if any, is increased. An appropriator of the latter class is as much interested in the correction of the erroneous decree, if such it be, as the plaintiff is in having it given full effect. But to an appropriator of the latter class it is immaterial whether the water in dispute between the plaintiff and defendants is used by plaintiff at his headgate or by defendants at their headgate as presently located; hence, as between the parties the controversy as to their relative rights to divert it, the plaintiff through his headgate, or defendants through theirs as presently located, presents a justiciable issue which it is proper for the court to determine because it can be done without affecting the rights of others. The decree quieting defendants' title to the water was effective to this extent, but it has no other or greater effect. Under the evidence adduced the decree entered correctly resolved the issue between the parties, and properly limited its effect.

Judgment affirmed.