No. 18,037.

W. RICHARD MEANS *v.* HAROLD E. PRATT, ET AL.
(331 P. [2d] 805)

Decided October 27, 1958. Rehearing denied December 1, 1958.

Messrs. AKOLT, TURNQUIST, SHEPHERD & DICK, for plaintiff in error.

Mr. DUDLEY I. HUTCHINSON, Mr. DUDLEY I. HUTCHINSON, JR., Mr. T. HENRY HUTCHINSON, for defendants in error.

*En Banc.*

MR. JUSTICE SUTTON delivered the opinion of the Court.

PLAINTIFF in error, to whom we will refer as petitioner, petitioned the district court for a change of point of diversion of his claimed water right in Lykens Canyon from Dry Creek, a tributary of the South St. Vrain River in Water District No. 5, Boulder County, Colorado. Notice was given pursuant to the statute, and a number of protestants appeared, among whom are the defendants in error.

Petitioner claims a priority by virtue of an original

appropriation to the Bear and McCory Ditch by decree entered July 2, 1882, in the Boulder County District Court affirming an appropriation by original construction for fifty inches on June 1, 1871, and an additional appropriation for first enlargement of said ditch on January 1, 1875, for thirty-five inches of water. By his petition he asserts that the proposed change of point of diversion will not injuriously affect the vested rights of other appropriators to the waters of Dry Creek, and that he and his predecessors in interest have been diverting the waters of said Dry Creek at the proposed new point of diversion for more than forty years; that the waters will be used on the same lands and for the same purpose, and the return flow to said stream will be the same as it has been for forty years. Petitioner admits that there is a dispute as to whether he owns the total priorities involved or only a part thereof.

Protestants in the court below, defendants in error here, filed their protest in which it is admitted that an appropriation for said Bear and McCory Ditch was decreed in 1882 as alleged by petitioner. They assert however that the point of diversion of said ditch is not located as claimed. They deny that the proposed change will not injuriously affect the vested rights of others and assert that the proposed change will result in an enlarged use of the water of said Bear and McCory Ditch both as to quantity and as to time, in that a larger number of acres will be irrigated than was at any time irrigated at the original point of diversion. By way of further protest and objection they allege that all of the decreed appropriations of water to the Bear and McCory Ditch have long since been and now are abandoned.

Upon trial and upon the conclusion of petitioner's evidence the court dismissed the petition on the ground that petitioner had failed to establish prima facie title to the decreed water awarded to the Bear and McCory Ditch; that his evidence showed the water decreed to the Bear and McCory Ditch has been abandoned; and

that protestants would suffer substantial damage and injury if petitioner were to be permitted to change the point of diversion of the water decreed to the Bear and McCory Ditch. Motion for new trial was dispensed with.

Petitioner assigns error on three grounds:

1. To the finding of the trial court that the water decreed to the Bear and McCory Ditch had been abandoned;

2. That petitioner had failed to establish prima facie title to the water decreed to the Bear and McCory Ditch; and

3. That protestants would suffer substantial damage and injury if the requested change of point of diversion were to be granted.

The record discloses that petitioner has owned the farm involved since 1932. He testified that since his ownership water from Dry Creek had been used to irrigate it. He produced several tenants who had operated the farm during his ownership, all of whom testified that water from Dry Creek had been used for irrigation during the period of their several tenancies. Other witnesses who had lived on adjoining properties testified to the use by petitioner and his predecessors in title of water from Dry Creek for the irrigation of this farm for a period far in excess of the statute of limitations. While the testimony of some of these witnesses was in many respects vague and uncertain, one fact clearly emerges; viz., that this farm has been irrigated with water from Dry Creek for more than forty years. Whether the water so used, or any water used during the past forty years, was diverted through the original Bear and McCory Ditch was not established. The testimony of the Water Commissioner of this district was to the effect that water could not be diverted at the point of diversion fixed in the 1882 decree for two reasons. First, the point so fixed was east of and down stream from petitioner's property, and second, that there was no structure to divert water at the original point of diversion.

The evidence did establish that three different points of diversion had been utilized by petitioner and his predecessors in title. Two of these were below the Nelson Ditch and consisted of rock and brush dams. The third diversion was through the Nelson Ditch for many years, though there is disputed evidence as to whether this was a diversion on behalf of petitioner or was an attempted sale by the Nelson Ditch owner of part of his water. It was also shown that all of the water of Dry Creek was used between the Nelson Ditch diversion and this petitioner's diversion. Further, that the new point of diversion was not at any established prior point of diversion but would be 70 to 75 feet below the Nelson Ditch headgate and could not interfere with the Nelson rights. One other point is that the evidence shows that there was no administration of the waters of Dry Creek and that all ditches taking water from this source have been without measuring devices.

From this factual situation the trial court concluded that the priority decreed to the Bear and McCory Ditch had been abandoned. This conclusion is not justified by the record before us. As recited above, the evidence shows that petitioner and his predecessors in title have diverted and used the waters of Dry Creek for the irrigation of this farm for more than forty years, and probably since 1871, when the first appropriation was claimed. That the point of diversion as fixed in the original decree renders it impossible to divert water into the ditch, as originally located, strongly suggests that such point was erroneously described and fixed in the decree. If the users of this water intended to, and thought that they were diverting water from Dry Creek under the decreed priority to the Bear and McCory Ditch, certainly no intention to abandon can be inferred. Moreover where a claim of abandonment is made the burden is upon the party so claiming to establish such claims by clear and convincing evidence. In *Pouchoulou*

*v. Heath,* (1958), 137 Colo. 462, 326 P. (2d) 656, we stated the rule to be:

"The plaintiffs assumed the burden of proving abandonment by clear and convincing evidence. Citing *Cline v. McDowell,* 132 Colo. 37, 284 P. (2d) 1056, and *Arnold v. Roup,* 61 Colo. 316, 157 Pac. 206.

▆ Here no witness testified to any fact from which an abandonment of any water right could be inferred, nor to any facts or circumstances from which an intention to abandon could be gleaned. On the contrary all of the evidence points to a regular and continued diversion and use of water from Dry Creek for the irrigation of this farm for more than forty years.

It is clear that the trial court in reaching its conclusion that the water rights involved had been abandoned, relied not upon any evidence before it but upon the allegations of the filed protests and the assertions and arguments of protestants' counsel.

▆ The court also found and determined that petitioner had failed to establish prima facie title to the water rights decreed to the Bear and McCory Ditch. This conclusion was reached in spite of the documents offered and received in evidence, consisting of deeds of conveyance beginning in 1909 and descending through several owners to petitioner, who acquired title in 1932. Exhibit 5, the earliest deed appearing in the record, dated December 23, 1909, does not recite any conveyance of rights in the Bear and McCory Ditch. After referring to shares of stock in two separate ditch companies, it states "and all water rights in any way appertaining or belonging to said land." What any prior deeds conveying this land between 1871 and 1909 may have recited with respect to the Bear and McCory Ditch does not appear. All of the deeds in evidence subsequent to the 1909 conveyance—five in number—do specifically describe the Bear and McCory Ditch rights. The question thus presented is: Does the omission of a specific description of the Bear and McCory rights in the 1909 deed

mean, as a matter of law, that no such rights were conveyed? We think it does not. Where a claim to such rights has been consistently asserted for nearly fifty years without challenge or interference and the water so claimed has been used upon the lands of petitioner and his predecessors in title for that period of time, we think a prima facie title to such right has been established, and in the absence of some fact or circumstance disclosing a patent inconsistency with the right claimed a presumption arises that the grantor in such deed intended to and did convey any and all water rights incident to and necessary to the beneficial enjoyment of the land.

In *James v. Barker,* 99 Colo. 551, 556, 64 P. (2d) 598, this Court said:

"A water right used, as here, for the irrigation of land, will pass under the appurtenance clause in a conveyance of land, without a specific mention in the deed, if the presumption arising from the circumstances of the transaction, make it appear that it was the intention of the grantor that it should so pass."

In the instant case there is nothing to suggest that the grantor of the 1909 deed, referred to above, intended to withhold any of the water or ditch rights from the conveyance, or that prior grantors had done so. In fact the contrary appears to be true because this deed stated that it was intended to convey "all water rights in any way appertaining or belonging to said land." This leaves no doubt that if such rights existed at the time of the conveyance they were intended to pass with the land.

The trial court's third finding was that protestants would suffer substantial damage and injury if the requested point of diversion were to be granted. We find nothing in the record to support this conclusion. Petitioner's testimony, as well as his pleadings, asserted that no increase in the use of the water was intended or contemplated, and that the same number of acres would be irrigated in the future as had been in the past. Even if

the court's finding were supported by evidence it would not preclude some sort of relief for petitioner. Under our statute (C.R.S. '53, 147-9-25) the trial court is in a position to control this since it is given authority to impose conditions upon which such change of point of diversion will be granted. Moreover where upon proper evidence the trial court finds that such change cannot be made without injury to the vested rights of others, if it deems it necessary to deny the change, it should also find that such injury cannot be prevented by the imposition of terms and conditions. See *Colorado Springs v. Yust* (1952), 126 Colo. 289, 249 P. (2d) 151.

Though we need not determine whether prescriptive rights to undecreed diversion points could arise in petitioner under the facts here presented, due to his utilizing different points of diversion for more than eighteen years, the fact still remains that the water in question was taken and used and one does not lose his possessory property rights in water by diverting the water at a point or points other than those decreed to him. *Nichols v. McIntosh* (1893), 19 Colo. 22, 24, 34 Pac. 278.

The decree being erroneous, the judgment is reversed and the cause remanded with directions to grant a new trial and to permit the parties to amend their pleadings as they may be advised.

Mr. Justice Moore not participating.