No. 19,477.

NOBLE AUSTIN *v.* GEORGE H. KOCH, ET AL.

(362 P. [2d] 167)

Decided May 22, 1961.

Messrs. Moses & DeSouchet, for plaintiff in error.

Messrs. Boyle and Witty, Mr. Max C. Wilson, for defendants in error.

*En Banc.*

Mr. Justice Doyle delivered the opinion of the Court.

Austin, to whom we will refer by name or as plaintiff, instituted this action to restrain the Kochs from interfering with the dam at Austin's headgate. A temporary restraining order was issued without notice and subsequently a supplemental complaint alleging interference with plaintiff's water supply was filed. Hearing was had on plaintiff's motion for a temporary injunction which was denied. Following the plaintiff's presentation of evidence the complaint was dismissed, and he is here by writ of error seeking reversal.

Testimony on behalf of the plaintiff was that he is the owner of the Gove Ditch and an 1880 decree for one foot of water, the headgate of which is on the defendants' land. The stream on which this headgate is located appears on the map, Exhibit A, introduced in evidence, as "Springs." Plaintiff testified that to his knowledge the headgate had been located in the place in question since 1924. This unnamed tributary flows into Texas Creek which in turn flows into the Arkansas River. The defendants, according to the allegations of the pleadings

and the testimony, including the admission of the defendants, have no adjudicated right. They are diverting water from the identical source, that is, the unnamed tributary referred to as the "Springs".

Plaintiff testified that his diversion dam has been torn out and that "no trespass" signs have been erected. Defendants have diverted the water from the watershed so that it is no longer available to plaintiff.

The surveyor of Custer County located the headgate of the Gove Ditch from the metes and bounds description contained in the decree on the stream marked "Springs", which appears on the map. He admitted, however, that the description of the decree was off about 200 to 300 feet in a north and south plane and about 30 feet from the stream itself.

The water commissioner testified that he has known the location of the headgate of the Gove Ditch since 1951 to be on the unnamed stream and that the defendants drop the gate and divert water into their ditch, and as a result plaintiff now obtains only about one-half of his water.

One Fred Trout testified that his father owned the plaintiff's place from 1905 and that he lived there until 1950. He also located the headgate of the Gove Ditch on the branch marked "Springs". The problem arises from an ambiguity in the decree itself, which according to the description locates the source of the plaintiff's water as both Koch's Spring Branch of Brush Creek and as Texas Creek. Koch's Spring Branch of Brush Creek is one-fourth mile west of the actual location of the springs where the plaintiff's point of diversion is located. Koch's Spring Branch of Brush Creek is in another watershed, unavailable to the plaintiff and removed from where the actual point of diversion has presumably been located since the date of the decree in 1880.

George Koch, one of the defendants, was called by the plaintiff for cross-examination. He admitted that he disturbed the plaintiff's dam and that he presently diverts

water from the unnamed branch on which plaintiff's headgate is located. He stated that he had a structure in the stream and that if the water rises and there is more water than goes into his ditch it will go on down the stream. He stated that he can remember as far back as 1917. He does not remember any headgate for the Gove Ditch.

The trial court found the facts essentially as they are outlined above, noting that the defendants " * * * have no decreed right in Koch's Spring Branch of Brush Creek or in said unnamed tributary, but they and their predecessors in title have used water from said unnamed tributary for irrigation for many years."

The court finally concluded that the plaintiff's decreed point of diversion is Koch's Spring Branch of Brush Creek as shown on the map, and for that reason the plaintiff was not entitled to protection of his point of diversion on the "Springs".

In seeking reversal, plaintiff in error summarizes his argument as follows:

"A. Where a decree is ambiguous, the place of actual diversion of water controls over error in naming the branch from which the water is decreed.

"B. Regardless of decree, plaintiff is the senior appropriator and has a property right which defendant, a junior appropriator, cannot disturb.

"C. The order dismissing plaintiff from *Koch v. Whitten* does not bar this action."

Defendants contend that the decree correctly describes the plaintiff's adjudicated priority as having its source in Koch's Spring Branch of Brush Creek and that plaintiff is stuck, so to speak, with this description regardless of its correctness. Defendants point out that the Thomas Balman Ditch No. 4 is entitled to priority No. 1 out of Koch's Spring Branch of Brush Creek.

## I.

*The legal effect of the ambiguity in the decree.*

As noted above, the decree gives to the Gove Ditch

an Arkansas River priority, a Texas Creek priority, and also grants to it Koch's Spring Branch of Brush Creek Priority No. 2 and Brush Creek Priority (No. 26). It is undisputed that Koch's Spring Branch of Brush Creek flows into Brush Creek, whereas the unnamed tributary on which the plaintiff claims, flows into Texas Creek. From the evidence before us, it would appear that these are separate and independent sources of supply. Thus once the evidence is in, there is a latent conflict arising from the wording of the decree itself. The trial court construed this evidence in the light of the decree and concluded that the plaintiff was making an unlawful effort to change his point of diversion from Koch's Spring Branch of Brush Creek to the unnamed tributary. The Court's thinking on this is expressed in its informal comments at the close of the case:

"Now the point for the Court to decide is whether that action changed the point of diversion and gave the plaintiff in this case the right to take his water from this stream some distance, a quarter of a mile at least to the east, to the point designated in the decree. I think it may be said without fear of contradiction that you can't change the point of diversion of water materially without having an order of Court in that respect, for this reason: That in most cases — probably not in this case — but in most cases in such a proceeding it is necessary to give notice to all those who may have priorities which would be affected in the change in the point of diversion. I don't get it from the evidence that there is any intervening parties here. But the defendant, on the stand under cross examination, admits that there is no intervening parties, and the water that he has been decreed, or his forbearers or predecessors is probably as of long standing as the parties plaintiff and their predecessors — although he has no decreed right."

The above conclusion is contrary to the evidence in the case. There was not even a suggestion that plaintiff or any of his predecessors had ever diverted water from

Koch's Spring Branch of Brush Creek as it appears on the map. On the contrary, all of the evidence shows that even prior to 1904 the Gove Ditch was clearly identifiable and that the headgate has been located on the unnamed tributary. The Koch's Spring Branch of Brush Creek was shown by the evidence as being one-fourth to one-half mile west and over a high ridge. Thus it cannot be concluded from this evidence that plaintiff was seeking to change any actual point of diversion. Instead, he sought emergency relief *against these defendants* seeking to establish his right to continue exercising his adjudicated priority at the very place where it has always been exercised. At the same time he sought in the complaint and in the supplemental complaint to prevent the defendants from taking an unlawful and inequitable advantage based on confusion arising from the wording of the decree. The question which we are called upon to decide is whether he may follow the procedure which he has chosen to follow and may obtain injunctive relief against the defendant under these circumstances.

■ Bearing in mind that this is not a statutory proceeding whereby the plaintiff seeks to change his point of diversion or a statutory proceeding whereby he seeks to correct a clerical error in the decree, we note first that any interference with the right of a prior appropriator to divert water, even though the person interfering owns the land through which the water flows, is subject to injunctive relief. See *Saint v. Guerrerio,* 17 Colo. 448, 30 Pac. 335; *McClellan v. Hurdle,* 3 Colo. App. 430, 33 Pac. 280.

The case of *Corey v. Long,* 111 Colo. 146, 138 P. (2d) 930, is similar to the instant case. There the defendant was the person asserting the right. He had actually moved his headgate from a low point to a higher point notwithstanding the decree placed it at the original location. The water commissioners recognized the new point by closing the plaintiff's headgate in order to supply the full priority of the defendant. The plaintiff contended

that the moving of the headgate deprived him of water which would otherwise be available to him. In holding that the defendant, as against the plaintiff at least, was entitled to a ruling that his right to divert the water at the new place was superior to that of the plaintiff, the Court noted that any such ruling would not be binding on other interested parties, but that this did not prevent an adjudication of the relative rights of the parties before the Court. The decisive language appearing in the opinion seems peculiarly applicable here:

" * * * It held further, as against the plaintiff, that the amended answer contained allegations that entitled defendants to have the right to divert their water in dispute at the new headgate quieted as against the claims of the plaintiff. Plaintiff, when suit was instituted, had an undecreed water right initiated many years after the diversion on which defendants' decree of priority was based and long after defendants had diverted water through their new headgate. Plaintiff's decree adjudicating his priority, set up by way of supplemental complaint, was entered after his suit was instituted. The trial court correctly held that plaintiff, when he initiated his right, had notice of the physical conditions existing on the stream and of defendants' then open and visible diversion of water at the new headgate, and that plaintiff had failed to show a right to the water in dispute superior to that of defendants; that on the contrary, defendants had shown a right superior to that of plaintiff. The court, as against plaintiff, found only that defendants were entitled to have their right to the use of the water diverted through the new headgate quieted as a superior right against plaintiff's claim to the superior right of its use when required to fill defendants' priority. The decree was entered accordingly. It did not attempt to determine the question of whether, in a statutory proceeding to change the point of diversion, or in a proceeding to correct the alleged error in the former decree, the defendants could prevail against other parties

in interest on the stream, including the public, or even against plaintiff himself. In such a proceeding public interests are involved. Here the court considered only the private interests of the litigating parties and expressly so limited the decree."

It follows from the reasoning of the *Corey* case that the plaintiff at bar was fully within his rights in seeking injunctive relief against the defendants the result of which would be binding on these parties only.

To the same effect is *Graeser v. Haigler,* 117 Colo. 197, 185 P. (2d) 781. There the decree erroneously described the point of diversion and the junior right holder sought to enjoin diversion at an undescribed point. It was claimed that the senior holder had abandoned his right. The trial court denied the relief sought, and on review, the judgment was affirmed on the authority of *Corey v. Long,* supra. The Court said:

" * * * The trial court did not attempt herein to change the point of diversion as it was without power to do so under our decisions. Two essential elements fixed in adjudication decrees are: The date of appropriation and the amount thereof. A third element, to wit, the point of diversion, is always subject to change so long as the same can be accomplished without injury to other appropriators; but, as stated above, the question of changing the point of diversion is not here involved, as the trial court expressly found."

See also *Pouchoulou v. Heath,* 137 Colo. 462, 326 P. (2d) 656, and *Means v. Pratt,* 138 Colo. 214, 331 P. (2d) 805.

It follows that the plaintiff was entitled to injunctive relief against the defendants and it was error to dismiss the complaint.

## II.

■ *The question whether plaintiff would be entitled to injunctive relief in the absence of a decree.*

Plaintiff points out that fundamentally water rights are not based on filing of maps or statements and that

such maps and statements are only prima facie evidence and are not conclusive; that his water right goes back to 1880 and the defendants' title dates from 1904. Therefore, plaintiff would be entitled to recover regardless of the decree. He cites *Black v. Taylor,* 128 Colo. 449, 264 P. (2d) 502; *DeHaas v. Benesch,* 116 Colo. 344, 181 P. (2d) 453; *Breitenstein, Some Elements of Colorado Water Law,* 22 Rocky Mountain L. Rev. 347, with the cases there collected.

It seems clear that the plaintiff would be entitled to relief against the defendant upon showing a prior acquisition of the right in question regardless of adjudication.

### III.

*Applicability of Koch v. Whitten.*

Defendants contend that the dismissal of plaintiff at his request in *Koch v. Whitten,* 140 Colo. 109, 342 P. (2d) 1011, constitutes a binding adjudication of plaintiff's rights here. In that case the water commissioners sought to enjoin these defendants from interfering with the flow of water in the unnamed tributary to Texas Creek, and it was held that the trial court erred in granting the water commissioners a judgment on the pleadings and remanded the case for trial on the merits.

In evaluating the defendants' claim that the rights of the plaintiff were adversely adjudicated in the prior litigation, it is helpful to note that defendants, who were plaintiffs there, set forth their position as not being in contention with any adjudicated right, stating: " * * * the water officials are wrong if they are taking plaintiff's water to supply an unadjudicated right." The possibility of adjudication against the plaintiff here was expressly ruled out by the following:

"In the instant case the complaint does not set forth any claim against Austin. It specifically alleges that the water in question does not flow into Koch's Branch of Brush Creek. In other words, it seeks to make clear that the source of supply of the Gove Ditch is different

512

from the source of supply of the plaintiffs' ditch. Moreover, Austin appears to have conceded this by moving to dismiss. If his rights could have been adversely affected he could have been expected to intervene rather than ask to be dismissed. The confession of this motion by the plaintiffs was a reiteration of what amounted to a disclaimer (alleged in the complaint) as against Austin. Therefore, plaintiffs' action in confessing the motion to dismiss cannot be said to constitute an admission that they had no claim against the defendant water officials."

We see no merit in defendant's argument that plaintiff is barred from proceeding with the present case by our decision in *Koch v. Whitten,* supra.

Dismissal of the complaint was error, hence the judgment is reversed and the cause remanded for a new trial consistent with the views expressed herein.