## No. 17,761.

GEORGINA TERLIAMIS *v.* JOE D. CERISE, ET AL.

(295 P. [2d] 224)

Decided March 26, 1956.

Messrs. PARKISON & STEWART, for plaintiff in error.

Mr. WILLIAM R. SHAW, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will hereinafter refer to plaintiff in error as peti-

tioner, and to defendants in error by name or as protestants.

Petitioner filed in the district court of Garfield county her application to change the point of diversion of 2.80 cubic second feet of water appropriated from Dry Creek originally adjudicated to Cerise Brothers Nos. 1 and 2 ditches under decree of the district court in and for Water District No. 38. She sought to change the point of diversion from said ditches to the headgate of the Pearson ditch about one mile upstream on Dry Creek, and contemplated use of the water on lands other than those upon which the water had been used.

Protestants are the owners of water rights, some junior and others senior to those which petitioner seeks to change. The grounds of protest of all the protestants, except the Beards, are identical and allege generally: (1) That the proposed change would be to the detriment of the conditions existing on the stream at the time of, and subsequent to, the appropriations of water by protestants; (2) that the change would take water from Sopris creek (which is supplied in part by Dry Creek), reduce its flow and place an added burden on protestants to successfully irrigate their lands; (3) that if the proposed change of diversion point is permitted there would be a substantial loss in the return flow to the stream; (4) that the proposed change would cause the flow in Dry Creek to become nonexistent in the summer months and would diminish the flow in the main stream of Sopris Creek; and (5) that if the change were permitted there would be an increased use of the waters sought to be diverted both in time and in quantity of land irrigated.

Protestants Floyd Aaron Beard and Edith Beard, in addition to the foregoing objections, assert that the grade and size of the ditch through which petitioner seeks to divert the water is such that the water thus diverted will be wasted, and that petitioner has abandoned the decrees or priorities, the point of diversion

of which she seeks to change. They further allege facts on which they base a claim for damages against petitioner, but since judgment was entered in favor of petitioner upon this claim and no cross error is assigned thereon, we deem it unnecessary to make further reference to this claims for damages.

A lengthy hearing was held before the trial court at the conclusion of which written findings of fact and conclusions of law were entered, the pertinent provisions of which are as follows:

"That if the change in points of diversion sought by petitioner should be granted, there would be a loss to the stream of the amount of evaporation and seepage of water which petitioner now bears by appropriation through the Cerise ditches and a gain of like amount to petitioner if diversion shall be made by the Pearson Ditch. There would also be a loss to the stream of return water from the Cerise ditches. Such seepage and loss of return waters are estimated by petitioner, through testimony produced by her, to be 5% of petitioner's priorities in the Cerise ditches and the evaporation is estimated at 2%, with a margin of error of 50% making a total estimated seepage, return water and evaporation loss to other appropriators of 10½% of petitioner's priorities in the Cerise ditches. Petitioner, by way of offered terms to make the change, is willing to abandon to the stream, by reduction in her decree, 10½% of her priority rights calling for a total of 2.80 cubic second feet in the two Cerise ditches, being .294 of one cubic second foot, leaving for proposed transfer to the Pearson Ditch, a total of 2.506 cubic second feet under both of petitioner's piorities 271 and 272 in the Cerise ditches.

"Dry Creek is a small stream in a steep narrow basin at high altitude running in a Northerly direction and has a rapid water run-off in the early part of the irrigation season. There are no appropriators of water intervening between the present points of diversion of the Cerise ditches and the Pearson Ditch, unless they be the prot-

estants Beard who are junior appropriators in the same two Cerise ditches. Dry Creek is in the Sopris Creek vicinity and is a tributary to West Sopris, the other fork being East Sopris, both of which forks of Sopris Creek are tributaries of the Roaring Fork River, a sizable stream. Protestants herein, also including protestants Beard, are downstream appropriators of Sopris Creek operating ranch properties and owning irrigation water priorities in various ditches which, collectively, are both junior and senior to the rights belonging to petitioner in the Cerise ditches. Sopris Creek is considerably over-adjudicated and the basin has a comparatively short irrigation season. Water is in scarce supply and no appropriator has the use of sufficient water for his needs. Administration is difficult because of the terrain and the sudden drop in the stream when administration occurs. Senior, as well as junior, appropriators, have difficulty in maintaining stable conditions on the stream. There has been a great loss of crops from year to year because of insufficient irrigation water. Conditions have become critical in late years.

\* \* \*

"That petitioner, being last in time and last in right with her Pearson Ditch and its decreed conditional priority for 20 cubic second feet of water, needs water of earlier priority date for the four or five hundred acres of land lying thereunder; that the Pearson Ditch has never had enough water; that the proposed change, if granted, would cause a constant and enlarged use of the water under the priorities involved, when available, upon the large acreage belonging to petitioner under her Pearson Ditch, and there would be a complete consumptive use thereunder; that there would be no return waters to the stream, although there is a respectable amount of bona fide testimony to the contrary; that such new use would be unlimited and would take the waters out of circulation, for although such water would perform double duty under the Pearson Ditch, yet there

is such a large acreage to which it would be applied that there would be no return flow to the stream·from which taken, and that such a change in conditions upon the stream would unduly disturb the status quo on Sopris Creek and would be injurious to other appropriators.

"The Court further finds that the terms offered by petitioner are not adequate to compensate for the injury which would be occasioned if the change in points of diversion were granted. Such change cannot be made upon terms."

The application to change the points of diversion was denied, and appropriate judgment was entered. Petitioner, seeking reversal of the judgment, brings the cause to this Court for review by writ of error.

Mr. Cowden, a water commissioner for District No. 37 and witness called by petitioner, testified that there would be less water return to Dry Creek if the point of diversion were changed. He said, inter alia:

"Well, I believe there would be approximately five per cent less return because part would go to the West Sopris drainage and there wouldn't be so much surface return from waste water due to the distance.

"Q. And what did you conclude with reference to the quantity that might be lost by evaporation chargeable to the water being transferred?

"A. Well, the stream itself is on a north slope and its in shaded ground so that evaporation from the sun would be a small amount. However, the character of the bottom of the stream is rocky and it would be lost that way, but I don't believe it would be more than twice what is considered normal or average, or two percent, or something like that.

"Q. Then your estimate of five per cent, plus the two per cent is the conclusion you arrived at?

"A. I believe that would be the approximate total loss to the Dry Creek system by this contemplated change of diversion."

He added that a margin of error in judgment of 50% would be safe, and that an abandonment to the stream of "ten and one-half per cent of the 2.8 cubic feet in these two Cerise Brothers first priorities would compensate Dry Creek and West Sopris and the owners of water diverted therefrom for the change."

Other witnesses for petitioner, none of whom possessed any special qualification to give expert testimony, gave opinions that little if any loss to the stream would result from evaporation or loss of return flow in the event that the change in point of diversion was granted.

Counsel for petitioner in their brief state in part that: "The evidence offered by the protestants was devoted primarily to establishing that there would be little or no return flow from the application of the water under Priorities No. 271 and 272 on the lands covered by the Pearson Ditch."

Protestant Beard, a rancher whose appropriation is junior to that of petitioner, testified in part as follows:

"What effect will the petitioner's change in the point of diversion cause upon the flow of Dry Creek during the summer months?

"Well, it will be dried up to a certain extent." He didn't believe there would be any return flow if the change were granted.

Witness Barthell, a "kind of retired farmer" and a water commissioner in District 38, testified in part that if the change were granted there would be "very little" return to Dry Creek"; "That sagebrush land would absorb the water, I think, practically everything that was pushed across it."

"Q. Would there be any return from that land by either waste or seepage water to the channel of West Sopris Creek?"

"A. That is a question I can't answer."

Protestant Leo Ray Light, who owned some senior and some junior rights, testified, in substance, that the proposed change of point of diversion would have a

tendency to decrease the flow of Dry Creek, or even when there is not enough water it could possibly dry it up completely; there could be some return from water used in the Pearson Ditch to the watershed of Dry Creek on the lower end; that there would not be a great deal of return flow to West Sopris Creek from the lands irrigated by the Pearson Ditch for some length of time because it is virgin soil and there would be a tendency for it to act as a sponge and soak up the water from the Pearson Ditch, and he could not determine how long it would take to soak to West Sopris or any place; and that the change of point of diversion would affect him because the Pearson Ditch would soak up the spring run-off or large flow in Dry Creek and there would be a lesser amount going into West Sopris at this time of year when everybody needs water.

Leo Light, farmer and cattle raiser, objected to the change for the reason that, "If that water was left on the land it was adjudicated for it would be back in the creek in two hours at the most, where if it is used away up there it will never get back in." He didn't think that 10½ per cent relinquishment to the stream would be adequate to compensate for the loss.

Mr. Whittlesay, farmer protestant and senior appropriator, testified in part:

"Q. What effect would this change have upon the flow of West Sopris Creek? "A. Well, it would take that much more water out of Sopris Creek. "Q. And would there be any return? "A. No, no return. "Q. Why do you say that? "A. Well, you take two feet of water adjudicated for fifty or sixty acres and put it on four or five hundred acres, where are you going to get any return?"

Three other protestants gave similar testimony.

Counsel for petitioner argue in their brief that the trial court erred in three particulars, to-wit: In finding that the change requested would result in a "complete consumptive use of the water," and that there would be

no "return flow" to the stream; in finding that petitioner's offer to relinquish 10½ per cent of her appropriation was inadequate to protect the loss to protestants; and in finding that the requested change could not be allowed on terms that would protect the rights of junior appropriators.

## Question to be Determined.

*Must we say as a matter of law that the trial court should have been "satisfied" that by the imposition of terms and conditions the requested change could be granted without injuriously affecting the vested rights of others?*

The question is answered in the negative. The pertinent statute is C.R.S. 1953, 147-9-25, from which we quote the following:

"If it shall appear that such change will not injuriously affect the vested rights of others, the change shall be permitted by the decree to be given by court. If, however, it appears that such change will injuriously affect the vested rights of others, the court shall deny the application *unless the court is satisfied* that by the imposition of terms and conditions such injurious effect may be prevented, in which case the court shall decree the change upon such terms and conditions." (Emphasis supplied.)

The burden of proof in a proceeding of this kind rests upon petitioner to meet the grounds of injury the protestants assert, and the objections must be met by evidence from which the court will be "satisfied" that injury to protestants can be avoided by the imposition of terms. From the record in the instant case we cannot say as a matter of law that the trial court should have been "satisfied" from the evidence presented that imposition of terms would prevent injury. In view of the specific finding to the contrary, it is clear that the evidence upon this question failed to "satisfy" even though the trial court stated that there was a "respectable amount of bona fide testimony" offered to support peti-

tioner in her claim that any injury could be avoided by relinquishment of a portion of her decreed priority to the stream.

■■■ We do not mean to say, with reference to the streams and water rights involved in this controversy, that the amount of actual injury to protestants and an adequate relinquishment of water to compensate the loss, could not have been ascertained with reasonable certainty. We only say that the court, upon the showing made, was justified in reaching the conclusion that the burden resting on petitioner had not been met in such manner as to "satisfy" the court that injury to vested rights would not result from the change.

The trial court in its findings made statements which clearly indicate that there was no misunderstanding of the legal principles applicable to cases involving change of the diversion point of water. A reference to these well established rules will be found in the opinion of this Court in *City of Colorado Springs v. Yust, et al.,* 126 Colo. 289, 249 P. (2d) 151.

The judgment is affirmed.